**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| SERENITY L., *et al.*, | : | |
| Plaintiffs, | : | Case No. 1:10-CV-00076 |
| v. | : | Sr. District Judge Beckwith |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, *et al.* | : : | Magistrate Judge Hogan |
| Defendants. | : | |

**Defendants' Motion to Dismiss Amended Complaint**

All Defendants move to dismiss the Amended Complaint.  Fed. R. Civ. P. 12(b) (1) and

(6).  The attached Memorandum supports this Motion.  Defendants also move to stay discovery

pending this Motion to Dismiss.

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General

/s/ *Roger F. Carroll*
ROGER F. CARROLL (0023142)
*Trial Counsel*
Roger.Carroll@ohioattorneygeneral.gov

/s/ *Elizabeth G. Hartnett*
ELIZABETH G. HARTNETT (0084259)
*Co-Counsel*
Elizabeth.Hartnett@ohioattorneygeneral.gov
Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3248
Telephone: (614) 466-8600
Facsimile:  (614) 466-6090
*Counsel for Defendants Sandra Stephenson
and the Ohio Department of Mental Health*

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
*Trial Counsel*
Eric.Holloway@ohioattorneygeneral.gov
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 644-7233
Fax: (614) 728-9327
*Counsel for Defendants Ohio Department
of Rehabilitation and Correction and Ernie
Moore*

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

    A.    Claims and Parties.......................................................................................1

    B.    Standard of Review for a Motion to Dismiss..............................................1

II.   LAW AND ARGUMENT ......................................................................................2

    A.    Plaintiffs failed to assert sufficient factual matters that present any plausible
           claim for relief as required by *Ashcroft v. Iqbal* ...................................................2

    B.    Plaintiffs Lack standing to assert their claims............................................5

           1.    Plaintiffs have failed to allege injury in fact..................................6

           2.    Plaintiffs fail to demonstrate that alleged injuries, if any, were caused by
               ODRC or DDMH's actions or inactions............................................8

           3.    Even if successful, Plaintiffs' alleged injuries would not be redressed by
               relief sought. .................................................................................10

    C.    Plaintiffs failed to state a claim under the Americans with Disabilities Act
           or the Rehabilitation Act............................................................................12

    D.    Plaintiffs failed to state a claim under the Medicaid Act .........................13

    E.    Plaintiffs failed to state a claim under the Food Stamp Act .....................15

           1.    The Food Stamp Act does not create a private right of action under
               §1983...............................................................................................15

           2.    The Food Stamp Act creates no legal obligation for Defendants ....................16

    F.    Plaintiffs failed to state a claim under the Eighth Amendment................18

    G.    Plaintiffs failed to state a claim under the Due Process Clause ...............19

    H.    In their Eighth Amendment and Due Process Claims, Plaintiffs simply have
           stated claims based in negligence, which is insufficient under 42 U.S.C.
           §1983...............................................................................................21

III.  CONCLUSION....................................................................................................23

CERTIFICATE OF SERVICE .......................................................................................24

## Memorandum in Support

### Summary

In response to Plaintiffs' Amended Complaint, all Defendants move to dismiss.  As addressed in Section II.A of this Motion, Plaintiffs have failed to state a claim upon which relief may be granted pursuant to Civil Rule 12(b)(6) and *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct 1937 (2009).  Furthermore, as addressed in Section II.B, this Court lacks jurisdiction to hear the Amended Complaint because all ten Plaintiffs lack standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Additionally, the Amended Complaint should be dismissed for flaws in the separate causes of action raised by Plaintiffs.  Specifically, addressed in Section II.C, Plaintiffs have failed to plead the requisite prima facie element under the Americans with Disabilities Act or the Rehabilitation Act that Defendants denied participation in or benefit of a certain program *because of* Plaintiffs' alleged qualified disability.  Addressed in Sections II.D and E, Plaintiffs rely solely upon the Medicaid Act and the Food Stamps Act in their third and fourth causes of action; however, neither act creates any legal obligation for Defendants.  As addressed in Sections II.F and G, Plaintiffs fail to state a claim under the Eighth Amendment or under the Due Process Clause, respectively.  As to the Eighth Amendment claim, Plaintiffs do not allege that any prison official disregards any claimed substantial harm; they essentially disagree with the level of assistance provided by Defendants as to re-entry.  As to the due process claim, Plaintiffs have no cognizable property interest in any asserted benefits program (food stamps, SSI, etc.) for which Defendants must help Plaintiffs to apply.  Finally, as addressed in Section II.H, Plaintiffs simply raise a negligence claim, which is inadequate for a claim under 42 U.S.C. §1983, pursuant to *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

Based on the analysis and explanation below, the asserted claims fail to state a claim for which relief may be granted.  Thus, Plaintiffs' Amended Complaint must be dismissed.

## I.    Introduction

### A.    Claims and Parties

In their sixty-one page Amended Complaint, Plaintiffs assert various vague, speculative and immeasurable facts and unsupported legal conclusions, through which they request declaratory and injunctive relief relating to assistance with access to benefits prior to release from prison. (Doc. 16, Amended Complaint.)  Following Defendants' first motion to dismiss, Plaintiffs have filed their Amended Complaint with allegations still insufficient to meet the pleading requirements under *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct 1937 (2009), and still insufficient to meet the jurisdictional standing requirements.

Plaintiffs include former inmates and one current inmate who were or are confined in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC").  The only Plaintiff in ODRC's custody at the time of filing is Plaintiff Guy B., a plaintiff who was first named in the Amended Complaint. (Doc. 16, Amended Complaint, ¶¶92-100.)  Each Plaintiff lacks standing, and each of the six causes of action is insufficiently plead and contains fatal flaws.   As established below, this action must be dismissed.

### B.    Standard of Review for a Motion to Dismiss

When lack of subject matter jurisdiction is asserted under Fed.R.Civ.P. 12(b)(1), a court must "accept as true all material factual allegations in the complaint."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  When the question to be considered is one involving the jurisdiction of federal courts, "jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Norton v. Larney*, 266 U.S. 511, 515 (1925), *accord*, *Walls v. Waste Resource Corp.*, 761 F.2d 311, 317 (6th Cir. 1985).

A complaint must contain "either direct or inferential allegations respecting all the material elements[,]" and those allegations must amount to more than "bare assertions of legal conclusions." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  The Supreme Court has clarified the dismissal standard as requiring sufficient factual matter, accepted as true, to state a viable claim that is plausible on its face. *Ashcroft v. Iqbal*, _ U.S. __, 129 S. Ct. 1937, 1948-50 (2009) (*citing Bell Atlantic Corp v. Twombly,* 550 U.S. 544 (2007); *see also, Howard v. City of Girard*, 2009 U.S. App. LEXIS 20895, p. 4-6 (6th Cir., Sept. 21, 2009).

## II.     Law and Argument

### A.     Plaintiffs failed to assert sufficient factual matters that present any plausible claim for relief as required by *Ashcroft v. Iqbal*.

Plaintiffs' Amended Complaint fails to fulfill the pleading requirements presented under *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1948-50 (*quotations omitted).* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 129 S. Ct. at 1948-50.  The allegations in Plaintiffs' Amended Complaint contain legal conclusions which merit no consideration. They also as a whole do not present any "plausible claim" for relief.

First, legal conclusions permeate the Complaint.  Plaintiffs conclude that they qualify for public benefits, but for Defendants' alleged wrongful conduct.  (Doc. 16, Amended Complaint, ¶

170.)  They also conclude that they will decompensate while they are in free society.  (*See* Doc. 16, Amended Complaint, ¶¶ 4; 11; 18-20; 42; 26-38; 48; 52; 56; 67; 78; 88; 114; 132-3; and 151-2.)  Asserting such harmful effects of Defendants' conduct, Plaintiffs then plead for relief, never providing factual allegations in support of such conclusions.

Second, Plaintiffs' Amended Complaint is replete with bald factual assertions and broad legal conclusions without directly connecting the two.  For example, Plaintiffs simply presume it is an accepted conclusion that the lack of pre-release planning causes Plaintiffs to be reincarcerated.  Plaintiffs also assert that they need "pre-release planning and transitional supports." (Doc. 16, Amended Complaint, ¶ 133.)  Yet, they do not allege how such services would guarantee their crime-free behavior.  Additionally, Plaintiffs presume it is an established factual conclusion that they will decompensate due to Defendants' acts or inactions.  Although they claim that lack of pre-release services, and that one Plaintiff was housed in a homeless shelter upon release, they do not claim that such failures caused their alleged mental health decompensation.  (Doc. 16, Amended Complaint, ¶¶ 43; 32.)

Third, Plaintiffs fail to present a "plausible claim," in that they simply allege facts without establishing proximate cause for all of their claims.  Of course, to recover on any claim, a plaintiff must show that a defendant caused the asserted harm. *Cheriee Gazette v. City of Pontiac,* 41 F.3d 1061, 1066 (6th Cir. 1994) (citing *Martinez v. California*, 444 U.S. 277 (1980) (other cites omitted)).  Plaintiffs have failed to demonstrate a causal link between their alleged injuries and Defendants' conduct sufficient for standing, as discussed in the section below.

For example, Plaintiffs' Amended Complaint still merely alleges facts concerning individual Plaintiffs; alleges facts concerning Defendants' conduct; and then simply states the rote elements required for each cause of action claimed. (Doc. 16, Amended Complaint, ¶6 to

¶100; ¶111 to ¶189; ¶191 to ¶218.) The lack of a connection between Plaintiffs' alleged injuries and Defendants' conduct requires this Court to assume that the conduct in some way matches the elements set forth in the "Claims for Relief" section of the Complaint and to assume that Defendants' conduct itself triggers liability.

Additionally, Plaintiffs simply allege that Defendants have violated a legal obligation under the ADA by "using methods of administration that subject Plaintiffs… to discrimination in violation of 28 C.F.R. §35.130(b)(3)(i)-(iii) and (b)(8)." (Doc. 16, Amended Complaint, ¶ 195a.) No further explanation is provided as to how Defendants violated such rules or why that amounts to a violation of an obligation under the ADA. Such assertions amount to "an unadorned, the-defendant-unlawfully-harmed-me accusation," which are insufficient pleadings. *Iqbal*, __ U.S. ___, 129 S. Ct. at 1948-50 (2009).

As if agreeing with the foregoing arguments, Plaintiffs filed their Amended Complaint in response to Defendants' first filed motion to dismiss. Yet, to address the pleading deficiencies identified in Defendants' first motion to dismiss, Plaintiffs have asserted only additional conclusions. For example, Plaintiffs add to their claims regarding Serenity L. as follows:

> 12. Based on information and belief, Serenity's repeated contact with the criminal justice system and her inability to successfully transition into her community are direct results of the ORDC's [sic] failure to provide Serenity with required pre-discharge planning and assistance.

> 13. Further, based on information and belief, it is imminently likely that Serenity will be reincarcerated due to the ORDC's [sic] repeated failure to assist her in her transition from prison into society and will again be deprived of the necessary pre-discharge planning this action seeks to redress.

(Doc. 16, Amended Complaint, ¶¶ 12-3, p. 6.) These, too, are nothing but conclusory allegations in which this Plaintiff says only lack of pre-discharge planning could cause a return to confinement in the state correctional system. They provide no factual allegations with which to

conclude that any facial plausibility exists to find that Plaintiffs have established a claim for which relief may be granted.  The foregoing paragraphs essentially are repeated for each of the other Plaintiffs, leading to the same conclusion.  (*See also* as to all other Plaintiffs, Doc. 16, Amended Complaint, ¶¶ 24-5;  37-8; 43-4; 50-1; 59-60; 69-70; 81-2; 99-100.)

"[If] plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007).  Here, Plaintiffs have failed to nudge any allegation into the sphere of what is plausible. They have failed to link asserted facts to the causes of action.  Such a pleading impermissibly requires the Court to fill in the blanks and assume what cannot be connected by the Complaint itself.  Such a pleading is not sufficient under *Iqbal and Twombly.*  Plaintiffs have not presented sufficient factual allegations that present a plausible claim for relief and have failed to do more than provide unsupported legal conclusions.  Thus, with their Amended Complaint filled with more conjectural and conclusory allegations than as found in their original Complaint, all of Plaintiffs' claims fail to state a claim for which relief may be granted, and their claims should be dismissed accordingly.

**B.**      **Plaintiffs lack standing to assert their claims.**

Even if compliant with *Iqbal* and *Twombly*, Plaintiffs do not have standing to seek relief. Plaintiffs have the burden of demonstrating that they meet the threshold question of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Rosen v. Tennessee Commissioner of Finance and Admin.*, 288 F.3d 918, 927 (6th Cir. 2002).  To demonstrate standing, Plaintiffs must show that: 1) they have suffered an "injury in fact" that is concrete and either actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged act of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *see also*, *Lujan*. Absence of any of the three requirements results in a lack of standing and the court's lack of jurisdiction. *See e.g., Lujan.* In this case, Plaintiffs lack standing based on deficiencies in all three requirements.

        **1.       Plaintiffs have failed to allege injury in fact.**

When, as in this case, a plaintiff seeks injunctive relief, he or she must show that there is a non-speculative, imminent threat of repeated injury to show that there is an injury in fact. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Demonstrating injury in fact requires more than an injury to a cognizable interest; it requires that the party seeking review be himself among the injured. *Lujan*, 504 U.S. at 563. Plaintiffs cannot simply allege wrongdoing by Defendants, but must also show that they have suffered or will imminently suffer non-speculative, concrete harm. *Lewis (citing Bounds v. Smith,* 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977)).

The requirement to show injury in fact is not changed in a class action, as named plaintiffs who represent the class must allege personal and actual injury. *Lewis,* 518 U.S. at 357 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 (1975)). A class representative without personal standing cannot predicate standing on injuries suffered by members of the class alone, but must still allege a "distinct and palpable injury to himself." *Warth v. Seldin,* 422 U.S. 490, 501 (1975).

In this matter, Plaintiffs have failed to allege an actual, concrete and personal injury as class representatives. Plaintiff Serenity L. is "fearful" of a possible negative outcome. (Doc. 16,, Amended Complaint, ¶11.) Being fearful that something may happen does not make it a concrete or actual injury. Plaintiff Anthony G. alleges a negative outcome is "likely" after his release from ODRC. (Doc. 16, Amended Complaint, ¶¶ 23.) Something that is "likely" to

9

happen is not concrete, actual, or imminent.  Plaintiff Diane F. is "terrified" and "anxious." (Doc. 16, Amended Complaint, ¶¶ 41-42.)  The language used to describe each of these alleged injuries is speculative.  An admittedly paranoid and anxious individual is terrified, fearful, anxious and frustrated of possible outcomes, but this does not create standing for injunctive relief.  Plaintiff Helen W. is "fearful that she will be unable to comply with the requirements of her release…" (Doc. 16, Amended Complaint, ¶ 48.)  Being fearful of a possible outcome, particularly of her inability to act, is not sufficient harm.

Plaintiffs Robert W., David B., and Alan G. allege harm in an inability "to maintain stable employment" and being homeless. (Doc. 16, Amended Complaint, ¶¶ 34, 35, 55, 61, 67, 68.)  Plaintiffs fail to state how such circumstances are a legal and tangible injury.

Plaintiff Alice G. claims no injury whatsoever; she "began receiving services from a community reentry program." (Doc. 16, Amended Complaint, ¶ 80.)  Plaintiff David B. received an appointment with a mental health care provider post-release and Plaintiff Alan G. "is receiving mental health care." (Doc. 16, Amended Complaint ¶¶ 57, 67.)  Plaintiff John V. has been placed in a residential treatment program for mental heath and substance abuse disorders. (Doc. 16, Amended Complaint, ¶ 89.)  The fact that these Plaintiffs received some services and have accessed mental health care highlights just how speculative the other Plaintiffs' estimation of possible injuries is.

Plaintiff Guy B. cannot claim a concrete or actual injury, as he is not yet due for release from incarceration. (Doc. 16, Amended Complaint, ¶ 92.)  He has not alleged any harm that is actually occurring or that will occur with any certainty.  Simply not knowing where he will continue mental health treatment following his release from prison is not sufficient to state a legal claim and is not a concrete or actual injury.

Additionally, all Plaintiffs, except for John V., claim that reincarceration is "imminently likely." (Doc. 16, Amended Complaint, ¶¶ 13, 25, 38, 44, 51, 60, 70, 82, 100.)  An "imminently likely" outcome is still simply a likely outcome, which is not actual or concrete.  And, even if reincarceration were a certain injury, it cannot be said to have been caused by a state agency or its director, as discussed in the immediate section below.

Plaintiffs have all failed to state an actual and concrete harm and thus, lack standing.

### 2.    Plaintiffs fail to demonstrate that alleged injuries, if any, were caused by ODRC or ODMH's actions or inactions.

To have standing, Plaintiffs must also demonstrate that an injury in fact is causally linked to the disputed conduct of a Defendant. *Lujan,* 504 U.S. at 560-61.  A court can only act to "'redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.'" *Children's Healthcare Is A Legal Duty, Inc. v. Deters,* 92 F.3d 1412 (6th Cir. 1996) (quotation omitted).  A link that is too attenuated or relies on speculated conduct by a defendant does not establish standing. *Goins v. Department of Defense,* 1999 U.S. App. LEXIS 826 (6th Cir. 1999).

All ten Plaintiffs fail to show a causal link for any alleged injury and Defendants' action for standing purposes.  For example, Plaintiff Robert W. alleges harm in being rendered homeless because "funding was cut for [his] residential program" and being unable to work for years "due to an injury."  (Doc. 16, Amended Complaint, ¶¶ 34-35.)  Plaintiff David B. alleges harm in being "unable to maintain stable employment", quickly running out of medication and "suffering from physical pain, high blood pressure and debilitating anxiety," but he has had a mental health appointment since his release.  (Doc. 16, Amended Complaint, ¶¶ 55, 57.)  Plaintiff Alan G. alleges harm in having no source of income for gas for his van, being sometimes "forced to skip meals and go hungry," and in being re-arrested, but he "is receiving

mental health care" and "has applied for Social Security and Medicaid benefits." (Doc. 16, Amended Complaint, ¶¶ 61, 67.)

Defendants' conduct cannot be said to have certainly or single-handedly caused Plaintiffs' alleged conditions such as homelessness, joblessness, or reincarceration. Those conditions are societal problems that could hardly be attributed to one cause and hardly can be deemed to have been caused solely by the actions or inactions of a state agency. To claim that any single actor, much less someone other than the prisoner himself, is the cause of a reincarceration ignores individual's volition and contradicts a guilty verdict in each criminal case resulting in incarceration. Although all Plaintiffs assert that their current conditions are the result of Defendant ODRC's "failure to provide… pre-discharge planning and assistance," a baseless legal conclusion does not sufficiently plead the standing requirement of causation. (Doc. 16, Amended Complaint, ¶¶12, 24, 37, 43, 50, 59, 69, 81, 91.) These boilerplate paragraphs do not get Plaintiffs over the causation hurdle for standing; the alleged injuries are still too attenuated to be said to be caused by any Defendant.

Furthermore, neither ODRC nor ODMH could possibly be deemed to have any causal control over Plaintiffs' non-participation in benefits programs, such as Food Stamps, Social Security, Medicaid or Medicare, because neither agency administers those programs nor determines eligibility for such benefits. Additionally, Plaintiffs fail to demonstrate that they are even eligible to receive such benefits, under the statutory limits for who may receive the benefits. *See, e.g.,* 42 CFR 435.2 through 42 CFR 435.965, (setting forth requirements for Medicaid state plans' eligibility requirements).

Each alleged injury is far too attenuated to be causally linked to any one action or inaction or to any individual or entity and thus, Plaintiffs lack standing.

3.     **Even if successful, Plaintiffs' alleged injuries would not be redressed by relief sought.**

All Plaintiffs have failed to meet the standing requirement of showing that the claimed injuries will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-61.  Redressability requires that prospective relief will remove the harm and that plaintiff will personally benefit in a tangible way from the court's intervention. *Warth v. Seldin,* 422 U.S. 490, 505, 508 (1975).

First, the alleged injuries of the Plaintiffs who have been released from ODRC's control cannot be redressed by the relief sought.  The Sixth Circuit has held that a prisoner who is no longer subject to the conditions giving rise to the request for injunctive relief because he has been transferred or released presents no live case or controversy and mootness bars judicial review. *Cain v. Bolden*, 1991 U.S. App. LEXIS 22209 (6th Cir. 1991).[1]  A plaintiff must initially have standing to bring a claim and must continue to have standing or else the claim becomes moot. *Arizonans for Official English v. Arizona,* 520 U.S. 43, FN 22 (1997) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  "If events that occur subsequent to the filing of the lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004); *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001).

Plaintiffs request relief in the form of declaratory relief and injunctive relief.  Such relief will not redress the released Plaintiffs' "injuries" if they receive a favorable decision.  The injunctive relief, if granted, would have no impact on all named Plaintiffs except for Guy B. as they have all been released from ODRC.[2]  Any assertion that these Plaintiffs may be re-

---

[1] For more examples, *see, Lyons v. Azam,* 58 Fed. Appx. 85, 87 (6th Cir. 2003); *Henderson v. Martin,* 73 Fed. Appx. 115 (6th Cir. 2003); *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489 (6th Cir. 1995); *Malloy v. Martin,* 729 F.2d 1461 (6th Cir. 1984); *Sharpe v. Patton,* 2010 U.S. Dist. LEXIS 3924, *20- *21 (E.D. Ky. Jan. 11, 2010); *Jones v. Pancake,* 2007 U.S. Dist. LEXIS 61084, 2007 WL 2407271, *2 (W.D. Ky. Aug. 20, 2007).
[2] All Plaintiffs except for Plaintiff Guy B. were released from ODRC's prison system at the time of filing the Amended Complaint. (Doc. 16, Amended Complaint ¶¶ 6, 14, 26, 39, 45, 52, 61, 71, 83.)

incarcerated is purely speculative and cannot be taken into consideration on the question of redressability.  Plaintiffs also cannot point to the putative class of incarcerated individuals to demonstrate redressability, as the individually named plaintiffs must independently have standing to represent a putative plaintiff class. *Lewis v. Casey,* 518 U.S. 343 (1996).  Thus, these Plaintiffs cannot point to any remedy which would redress their alleged injuries.

Second, for the remaining Plaintiff under ODRC's control, Plaintiff Guy B.'s alleged injuries are so speculative and tenuously linked to any action by Defendants, as discussed in previous sections, that the requested relief cannot redress his alleged injuries or provide a tangible benefit to him.  If Plaintiff Guy B. were granted the requested declaratory and injunctive relief resulting in Defendants' assistance in applying for public benefits and assistance in obtaining mental health services post-release, that assistance would not ensure any result for Guy B.  Receiving assistance in applications and contact with other agencies does not guarantee that Guy B. will be eligible for and enrolled in public benefits.  It does not guarantee that Guy B. will follow up with appointments for mental health services.  It does not guarantee that Guy B.'s mental illness will be controlled so as to limit his criminal and impulsive behaviors.  And, it does not guarantee that Guy B. will refrain from breaking the law, from violating post-release conditions or from being reincarcerated.  The requested relief would not redress Guy B.'s alleged injuries, nor would it prevent the nebulous claims of future possible harm.

All Plaintiffs lack standing, as no Plaintiff can show all three requirements of the standing doctrine.  Absence of any of the three requirements results in a lack of standing and the court's lack of jurisdiction. *Lujan; Lewis.*  Accordingly, this case should be dismissed for lack of jurisdiction.

**C.     Plaintiffs failed to state a claim under the Americans with Disabilities Act or the Rehabilitation Act.**

Courts will analyze a claim under Section 504 of The Rehabilitation Act ("Rehabilitation Act") and Title II of the Americans with Disabilities Act ("ADA") in the same way. *See* 28 C.F.R. Pt. 35, App. A. ("the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities"); 28 C.F.R. §35.103(a).  Accordingly, whether Plaintiffs have properly pled an ADA and Rehabilitation Act claim can be analyzed concurrently.

"To establish a violation under the ADA, plaintiffs must demonstrate that (1) they are "qualified individual[s] with a disability"; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *See, e.g., Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998); *Civic Ass'n. of the Deaf v. Giuliani,* 915 F. Supp. 622, at 634 (S.D.N.Y. 1996) (citing 42 U.S.C.S. §12131).

A requisite element for a prima facie case under the ADA or Rehabilitation Act is pleading that Plaintiffs were denied the opportunity to participate in a program *because of the disability. Doe;* 42 U.S.C. §12131.  That the denial of participation in a benefit or program be *because of* the disability is an essential element. *Owens v. O'Dea,* 1998 U.S. App. LEXIS 10761 (6th Cir. 1998) (citing *Burns v. City of Columbus,* 91 F.3d 836, 841 (6th Cir. 1996)).  Where plaintiffs challenging exclusion from a program are in fact being excluded for another neutral reason, such as age, plaintiffs have failed to prove that they are being excluded by reason of the disability and a claim has not been stated. *Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026 (1995).

Simply put, nowhere in Plaintiffs' Amended Complaint is there a statement that Defendants denied Plaintiffs the opportunity to participate in a program *because of* their disabilities. Without demonstrating this element, Plaintiffs have not stated a claim under the ADA or the Rehabilitation Act upon which relief can be granted.

**D.      Plaintiffs failed to state a claim under the Medicaid Act.**

Plaintiffs' third, fourth, fifth, and sixth causes of action rely upon 42 U.S.C. §1983 to allege a claim against Defendants. However, ODRC and ODMH are not "persons" that can be liable under §1983, and if the State were a person, such claims would be barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). Accordingly, Defendants ODRC and ODMH should be dismissed from those causes of action.

In the third cause of action, Plaintiffs allege that Defendants have violated a legal obligation under 42 U.S.C. §1396a(a)(8). (Doc. 16, Amended Complaint, ¶¶ 205-207.) However, neither ODRC, nor ODMH, nor their Directors have a legal obligation under that statute to ensure Plaintiffs receive benefits afforded by it.

Medicaid is a contractual federal program that helps states pay for medical services. "[S]tates that accept federal Medicaid funding must develop a state Medicaid plan that complies with the terms and conditions upon which the federal funds were offered." *Brown v. Tennessee Dep't of Finance and Administration*, 2009 U.S. App. LEXIS 4847 (6th Cir.), FN 1. The requirements for that state plan are listed in 42 U.S.C. §1396a(a), titled "State plans for medical assistance." Subsection 1396a(a)(8) enumerates one specific requirement for the contents of the state plan for medical assistance, that it provide individuals with the opportunity to apply for medical assistance and that medical assistance be provided promptly. 42 U.S.C. §1396a(a)(8). Another subsection designates that one "*single* state agency" be responsible for the administration

16

of the state plan. 42 U.S.C. §1396a(a)(5).  Thus, §1396a(a)(8) creates a legal obligation for one state agency to ensure that the state plan complies with §1396a.  That single state agency is the state agency that administers the Medicaid program, which is neither ODRC nor ODMH.

Plaintiffs additionally cite 42 C.F.R. §435.906 as authority creating a legal obligation in ODRC and ODMH, without any factual or legal basis.  This rule states: "The agency must afford an individual wishing to do so the opportunity to apply for Medicaid without delay." 42 C.F.R. §435.906.  The use of the singular in this rule means that one agency is responsible for affording individuals the opportunity to apply, which is consistent with 42 U.S.C. §1396a(a)(5).  The scope of this section of rules is stated as: "This subpart sets forth the requirements for processing applications, determining eligibility, and furnishing Medicaid."  Any obligation created by this rule rests with the agency that is responsible for processing application, determining eligibility or furnishing Medicaid, none of which are the responsibility of ODRC or ODMH or its directors.

ODRC is governed by Ohio Revised Code Chapter 5120.  Although there is no general provision that sets forth that department's duties and purpose, nothing in Chapter 5120 makes reference to the Medicaid program or a state plan.  ODMH's powers and duties are set forth in Ohio Revised Code §5119.02 ("General powers and duties of department") and Ohio Revised Code §5119.06 ("Duties of department").  Neither statute refers to the Medicaid program or a state plan.

Despite Plaintiffs' assertion that ODRC and ODMH have "authority delegated by the Ohio Department of Job and Family Services" which creates a legal obligation under §1396a(a)(8) or 42 C.F.R. §435.906, Plaintiffs have failed to cite any specific source of the delegation.  (Doc. 16, Amended Complaint ¶ 206.)  Although facts in a complaint must be assumed true when a Court considers a motion to dismiss, a baseless legal conclusion need not be assumed as true, nor is such a baseless legal conclusion sufficient for pleadings requirements.

*Iqbal*, __ U.S. ___, 129 S. Ct. at 1948-50 (2009).  Pointing to a "Partnership Agreement" between ODRC and ODMH does not sufficiently create a legal obligation under §1396a(a)(8) or 42 C.F.R. §435.906 for the purpose of stating a claim.  Where neither ODRC nor ODMH is the single state agency responsible for the Medicaid program or state plan, a "Partnership Agreement" between those two agencies cannot create a legal obligation concerning Medicaid. (Doc. 16, Amended Complaint, ¶ 206.)  Without showing how or when either ODRC or ODMH became a delegatee of the authority and obligations of the Medicaid Act and its companion rules, Plaintiffs have failed to state a claim under these laws against either ODRC or ODMH.

Because Plaintiffs' third cause of action relies entirely on obligations created by U.S.C. §1396a(a)(8) and 42 C.F.R. §435.906, but neither statute, rule, nor an agreement between ODRC and ODMH create an obligation on the Defendant agencies, much less on the Defendant Directors this claim must be dismissed.

**E.      Plaintiffs failed to state a claim under the Food Stamp Act.**

In the fourth cause of action, Plaintiffs have failed to state a claim upon which relief may be granted because no private right of action exists under this section of the Food Stamp Act and because the Food Stamp Act does not create a legal obligation for Defendants ODRC, ODMH or on the Defendant Directors.

**1.      The Food Stamp Act does not create a private right of action under §1983.**

Plaintiffs incorrectly rely on a private right of action to sue under 7 U.S.C. §2020(e) through 42 U.S.C. §1983.  In order to establish a §1983 claim, plaintiffs must assert a violation of a federal <u>right</u>, not merely a violation of federal law. *Blessing v. Freestone* , 520 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989)). "[I]f Congress wishes to create new rights enforceable under §1983, it must do so in clear and

unambiguous terms[.] *Gonzaga University et al. v. Doe,* 536 U.S. 273, 283-85 (2002).  In the case of 7 U.S.C. §2020(e), new privately unenforceable rights were not intended by Congress. *See Clark v. Portage County,* 281 F.3d 602, 605 (6th Cir. 2002) ("[u]nder the Plaintiff's theory, the state agency would be hauled into court each time one of the millions of child support claimants is dissatisfied because the state has not collected child support payments.")

Here, Plaintiffs claim they are entitled to injunctive relief based on a statute that concerns the creation and administration of a state plan for the Food Stamp Program, under 7 U.S.C.S. §2020(e). (Doc. 16, Amended Complaint ¶¶ 208-12.) Under Plaintiffs' use of §1983, a state agency or its directors would be hauled into federal court for any delay in the application process or eligibility determination for the food stamps program, even if the obligations have been delegated to local agencies.  Nothing in the Food Stamp Act suggests that Congress intended such a result.  *See Almendares v. Palmer*, 2002 U.S. Dist. LEXIS 23258, *11 (N.D. Ohio Dec. 3, 2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit ….") (quoting *Gonzaga,* 122 S. Ct. at 2277)).  Accordingly, there is no private right of action available under 7 U.S.C. §2020(e) and the fourth cause of action must be dismissed.

**2.      The Food Stamp Act creates no legal obligation for Defendants.**

Furthermore, the statutes cited by Plaintiffs do not confer a legal obligation on ODRC, ODMH, or on their Directors.  Generally, 7 U.S.C. §2020 is the section of the Food Stamp Act that governs the administration of the Food Stamp Program and sets forth the responsibilities of the state agency that administers that program.  Subsection §2020(e) sets out the requirements for the state plan of operation for the program and lists what "the State agency shall" do. Specifically the state agency "shall provide timely, accurate, and fair service to applicants for,

and participants in the [food stamp program]." 7 U.S.C. §2020(e)(2)(B)(i).  Also, "the state agency shall thereafter promptly determine the eligibility of each applicant... not later than thirty days following its filing of an application, and…the state agency shall provide… a clear written statement explaining what acts the household must perform to cooperate in obtaining verification and otherwise completing the application process". 7 U.S.C. §2020(e)(3).

These obligations are imposed on "the State agency," which is defined in the definitions section of the Food Stamp Act, as "the agency of State government, including the local offices thereof, which has the responsibility for the administration of the federally aided public assistance programs within such State…" 7 U.S.C.S. §2012.

Neither ODRC nor ODMH are "the State agency" that administers the Food Stamp program.  Nothing in ODRC's governing statute discusses an obligation to administer the Food Stamp program.  O.R.C. Chapter 5120.  Neither of the statutes setting forth ODMH's powers and duties includes an obligation to administer the Food Stamp program. O.R.C. §5119.02, §5119.06. ODRC and ODMH are not the State agency that administer this program and are accordingly not subject to any legal obligation under 7 U.S.C.S. §2020(e).

Plaintiffs simply state that ODRC and ODMH have "authority delegated by the Ohio Department of Job and Family Services" as the basis for a legal obligation under 7 U.S.C. §20(e). (Doc. 16, Amended Complaint, ¶ 210.)  As in the third cause of action, Plaintiffs fail to cite any specific source for that "authority." Plaintiffs' baseless legal conclusion is not sufficient for a pleading under *Iqbal. Id.,* __ U.S. ___, 129 S. Ct. at 1948-50 (2009).  Again, pointing to a "Partnership Agreement" between ODRC and ODMH does not demonstrate any legal obligation under the Food Stamp Act, where neither agency has a legal obligation under that statute. (Doc. 16, Amended Complaint, ¶ 210.)  Without showing how or when either ODRC or ODMH

became a delegatee of the authority and obligations of the Food Stamp Act, Plaintiffs have failed to state a claim under this law against Defendants.

Without a private right of action under 7 U.S.C. §2020(e) and without citing any valid legal authority for its fourth cause of action, Plaintiffs have failed to state a claim upon which relief can be granted against Defendants ODRC, ODMH or either agency's Director.

**F.      Plaintiffs failed to state a claim under the Eighth Amendment.**

Under the Eighth Amendment, a person confined in a correctional setting is to be provided with humane conditions of confinement that fulfill life's minimal necessities.  The Eight Amendment's prohibition of cruel and unusual punishments imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984) (further citations omitted)).  To establish a claim of deliberate indifference against the Defendants under the Eighth Amendment, the Plaintiffs must show that each Defendant knew of and disregarded a substantial risk of serious harm.  *Farmer,* 511 U.S. at 837.

Regarding Defendant Stephenson and the Ohio Department of Mental Health, Plaintiffs do not allege that either one confines any Plaintiff.  Only ODRC confines Plaintiffs as a criminal offender.  *See* Ohio Rev. Code § 5120.01.  For this reason, Defendants ODMH and Director Stephenson must be dismissed from Plaintiffs' fifth and sixth claims under the Eighth Amendment and the Due Process Clause.

Plaintiffs present allegations that address some of the elements in a *Farmer*-based claim of deliberate indifference.  They note that Defendants know of their alleged harms.  They note that Defendants disregard such harms.

21

However, Plaintiffs do not assert that any Defendant disregards a substantial risk of serious harm that occurs within the prison walls.  Specifically, Plaintiffs allege that, if they decompensate, they do so when they are in free society.  (Doc. 16, Amended Complaint, ¶¶ 11; 19; 41-2; and 66-7.)  Some Plaintiffs did not assert any discernable harm from a mental health stand point.  (Doc. 16, Amended Complaint, ¶¶ 26-38; 49; 57; 90-1.)

Plaintiffs seek constitutional protections intended only for the confined to be applied to them when they are released to free society.  The Eighth Amendment, though, does not extend beyond the confines of any correctional setting, as its applicable provisions protect the confined population in a prison, not free members of society.  *See Rhodes v. Chapman,* 452 U.S. 337, 69 L.Ed. 2d 59, 101 S. Ct. 2392 (1982); *Helling v. McKinney,* 509 U.S. 25, 31 (1993);  *Hudson v. McMillian,* 503 U.S. 1 (1992); *and see Farmer*, 511 U.S. at 833 ("the Eighth Amendment places restraints **on prison officials**…." (emphasis added) (cites omitted)).

**G.** **Plaintiffs failed to state a claim under the Due Process Clause.**

Plaintiffs seek to unreasonably expand §1983 jurisprudence and find a due process violation when there is no property interest at stake.  "The *Fourteenth Amendment's* procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits."  *Board of Regents of State Colleges et al v. Roth,* 408 U.S. 564, 576 (1972).  To have a property interest in a benefit, an abstract need for, a desire for, or a unilateral expectation of the benefit is not enough. *Roth,* 408 U.S. at 576.  A person must have a legitimate claim of entitlement to the benefit to trigger a property interest.  *Roth,* 408 U.S. at 576.  The United States Supreme Court has never found a due process interest for applicants of government benefits.  In *Lyng v. Payne,* 476 U.S. 926, 942 (1986), the Court said "we have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of

22

entitlement protected by the *Due Process Clause of the Fifth or Fourteenth Amendment." Id.* The Plaintiffs are seeking protections from this Court that the United States Supreme Court has never granted.

In order to present a due process claim, Plaintiffs must be receiving government benefits. However, Plaintiffs fail to assert that fact which is essential to any due process entitlement. Rather, Plaintiffs merely assert that their property rights have been violated by Defendants "by failing to provide reasonable opportunities for them *to apply for various public benefits* for which they are eligible and to which they are entitled prior to their release from Ohio State prisons." (Doc. 16, Amended Complaint, ¶ 218.) (emphasis added.).   Rather, the Plaintiffs' due process claim is hinged upon a "unilateral expectation" of receipt of the benefits.  This unilateral expectation does not equate to a due process violation.[3]

In very limited circumstances, Circuit Courts have afforded due process rights to applicants for government benefits.  However, the Sixth Circuit has refrained from holding that due process is constitutionally required for applicants of government benefits.  Rather, when faced with a pre-determination due process claim, the Sixth Circuit has looked to the process— without determining if a property interest is involved—and determined that the protections in place were appropriate. *Harper v. Secretary of Health and Human Services*, 978 F.2d 260, 264 (6th Cir 1992); *Barker v. Cincinnati Metropolitan Housing Authority*, 675 F. 2d 836 (6th Cir. 1982).    But even where other circuits have found due process rights for applicants, the court reviewed those rights in the context of denials of the benefits and what recourse an applicant had to seek review of the denial. A significant distinguishing factor is that the entity answering for the quality of due process given is the agency tasked with administering the benefits.  To be sure,

---

[3] This unilateral expectation is all the more a flawed basis for a Due Process claim when raised against Defendants who have no control over the administration of the benefits programs or the determination of eligibility for those benefits. For further discussion, refer to Sections F and G of this motion.

neither DRC nor ODMH are responsible for administering government programs and without that involvement, neither should be held to answer for due process violations.

Because Plaintiffs base their claim for Due Process in a non-existent property right of applying for benefits and because the Defendants are not the entities that define or afford the due process surrounding the application for benefits, Plaintiffs have failed to state a Due Process claim upon which relief can be granted.

**H.     In their Eighth Amendment and Due Process Claims, Plaintiffs simply have stated claims based in negligence, which is insufficient under 42 U.S.C. § 1983.**

To present a claim under 42 U.S.C. § 1983, a plaintiff must allege, and later prove, that a defendant acted under color of state law and the act by the defendant violated plaintiff's rights protected by the constitution or laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). Without establishing the deprivation of a federally protected right, "§ 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 347 (6th Cir. 1994).

Furthermore, the plaintiff may not simply rest upon a level of culpability that amounts only to negligence. *Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976). If a defendant has not acted [or failed to act] with any deliberation, a defendant may be negligent, however "injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest." *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 348 (6th Cir. 1994) (*citing Collins v. City of Harker Heights*, 503 U.S. 115, 127-8 (1992) (*further citations omitted*)).

Regarding Plaintiffs' constitutional claims, a theory of negligence permeates the Amended Complaint.  For example, Plaintiff Al G. allegedly never received "effective" assistance, indicating some assistance had at least been received. (Doc. 16, Amended Complaint, ¶66.)  Another Plaintiff says she received notice three days before her release from prison to meet with "Joe the clinician," albeit on a date that was four days after her temporary supply of medicine, provided gratis by ODRC, was to run out. (Doc. 16,  Amended Complaint, ¶ 78.)  As representative statements by Plaintiffs regarding care provided for them, Plaintiffs cannot rely upon such statements to show that any Defendant knew of and disregarded a substantial risk of serious harm.  *Farmer, supra*.  At most, it reflects a disagreement with how to provide services.

Additional allegations support only a theory of negligence for purposes of Plaintiffs' claims based on alleged violations of federally protected rights.  On the one hand, Plaintiffs protest Defendants' alleged failure to comply with "The Ohio Plan."  (Doc. 16, Amended Complaint, ¶ 111-2.)  They complain that Defendants do not fulfill a transition release plan. (Doc. 16, Amended Complaint, ¶ 111-3.)  They also complain that Defendants do not fulfill objectives set forth in a mission statement.  (Doc. 16, Amended Complaint, ¶101.)  On the other hand, Plaintiffs allege that efforts were made to provide such services.  (Doc. 16, Amended Complaint, ¶¶ 32; 33; 66; 78; 157; and 214.)  Plaintiffs agree that they are provided with pre-release services; they just do not agree with the level of services provided.  However, relying on negligence as a theory of liability in a §1983 claim, is inadequate. *Farmer, supra*.  Thus, the Eighth Amendment and Due Process claims must be dismissed.

### III.    Conclusion

The Amended Complaint contains deficiencies that negate the need for additional review of the claims.  Such deficiencies include the lack of standing and the lack of factual allegations

that comply with the *Iqbal* standard. The Amended Complaint also is deficient as to the merits of the ADA, Rehabilitation Act, Medicaid Act, Food Stamp Act, Eighth Amendment, and Due Process Claims themselves. As such, Defendants ask the Court to dismiss the Amended Complaint. Also, Defendants ask the Court to stay discovery pending this motion to dismiss because it would be premature, inefficient and unduly burdensome for Defendants considering the flaws in the Amended Complaint.

Respectfully submitted,


RICHARD CORDRAY
Ohio Attorney General


/s/ *Roger F. Carroll*
ROGER F. CARROLL (0023142)
*Trial Counsel*
Roger.Carroll@ohioattorneygeneral.gov


/s/ *Elizabeth G. Hartnett*
ELIZABETH G. HARTNETT (0084259)
*Co-Counsel*
Elizabeth.Hartnett@ohioattorneygeneral.gov
Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3248
Telephone: (614) 466-8600
Facsimile: (614) 466-6090
*Counsel for Defendants Sandra Stephenson*
*and the Ohio Department of Mental Health*

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
*Trial Counsel*
Eric.Holloway@OhioAttorneyGeneral.gov
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 644-7233
Fax: (614) 728-9327
*Counsel for Defendants Ohio Department of*
*Rehabilitation and Correction and Ernie Moore*


## CERTIFICATE OF SERVICE

I certify that, on May 17, 2010, a copy of the foregoing *Defendants' Motion to Dismiss Amended Complaint* was filed electronically. Parties may receive their copy through the Court's ECF system.


/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY