**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **SERENITY L.,** *et al.*, | : | |
| Plaintiffs, | : | Case No. 1:10-CV-00076 |
| v. | : | Sr. District Judge Beckwith |
| **OHIO DEPARTMENT OF REHABILITATION AND CORRECTION,** *et al.* | : : | Magistrate Judge Hogan |
| **Defendants.** | : | |

**Defendants' Reply Supporting Motion to Dismiss (Doc. 19)**

### I.     Introduction

Plaintiffs' Amended Complaint must be dismissed. Plaintiffs all but acknowledged that they have standing problems and they cannot meet the "case or controversy" requirement of Article III. Plaintiffs allegations of a threat of injury are not "real and immediate" but "conjectural and hypothetical." But in an attempt to overcome this obstacle, plaintiffs ask the court to apply an infrequently used and inapplicable exception to the standing requirements. However plaintiffs cannot satisfy the conditions of the "capable of repetition" doctrine. Further, Plaintiffs thread baseless legal conclusions through their pleadings in hopes of piecing together a complaint; however, they fail to overcome the pleading standards required by Civ. R. 12(b) and *Ashcroft v. Iqbal.* Moreover plaintiffs unsuccessfully attempt to thrust upon defendants responsibilities involving the operation of the Medicaid and food stamp programs when none exist. Finally, Plaintiffs' attempt to use the defendants' policies to stretch the concept of legal duty to turn what is essentially an improperly pled negligence claim, into a six count complaint is unsupported by law. Plaintiffs have simply not properly pled any cause of action against

defendants which meet the threshold jurisdictional requirements, having raised normative issues, rather than legal ones. In short Plaintiffs failed to (1) establish that their Amended Complaint overcomes the *Iqbal* pleading standard, (2) establish standing, and (3) identify viable claims under their various sets of claims for relief. The Amended Complaint should be dismissed in its entirety, as further established in the pending Motion to Dismiss and below.

## II. Argument

### A. Plaintiffs failed to assert sufficient factual allegations to present any plausible claim for relief as required by *Ashcroft v. Iqbal*.

Defendants argued that the Amended Complaint does not properly allege that each Plaintiff would (1) qualify for the underlying social benefits at issue; (2) decompensate while released to free society; and (3) decompensate only because of the lack of pre-release planning by Defendants. (Doc. 19, p. 5-6.) In response, Plaintiff pointed to no allegations to support such conclusions. As such, Plaintiffs have failed to show that their claims have, "facial plausibility…[that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009). Despite filing an Amended Complaint, knowing that Defendants had asserted *Iqbal*'s application in the first motion to dismiss in this case, Plaintiff did little to nothing to, "nudge[] their claims across the line from conceivable to plausible…" such that their Amended Complaint must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Plaintiffs lack standing to assert their claims.

In their Memorandum in Opposition, Plaintiffs essentially acknowledge that they do not meet the standing doctrine requirements to satisfy the case or controversy requirement of Article III. Plaintiffs' case does not fit within the exceptionally applied capable-of-repetition doctrine.

### 1. Plaintiffs cannot show any imminent injury in fact.

Plaintiffs erroneously assert that a "strong probability of repeated future injury" is sufficient to establish standing and that this threshold is met in the Amended Complaint. (Doc. 23, p. 6.) However, to have standing in a case where plaintiffs seek injunctive relief, a plaintiff must show a non-speculative, imminent threat of repeated injury, not just a strong probability that something may occur. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). A threatened injury must be "certainly impending" to constitute an injury in fact. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). The injury must be concrete, particularized, and actual or imminent, rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In their Memorandum in Opposition, Plaintiffs specify that the injury in fact which gives them standing "consists of the deprivation by Defendants of disability accommodations in the form of inadequate pre-release discharge planning and coordination with proper mental heath services, as well as the substantial likelihood that sometime in the future Plaintiffs will be reincarcerated and again deprived of disability accommodations." (Doc. 23, p. 6.) These alleged injuries still are not sufficient to satisfy the standing requirements. All Plaintiffs except for Plaintiff Guy B. have been released from ODRC custody. (Doc. 16.) None of the Plaintiffs can show that they are in immediate danger of sustaining a direct injury. A threat of injury which is conjectural or hypothetical, such as the threat of injury alleged here, is not enough for standing.

For any of the speculative injuries to occur, the released Plaintiffs must in fact be reincarcerated. To suggest that Plaintiffs may commit a felony, then return to state prison and then suffer an injury at the hands of the Defendants does not create a case or controversy, because the threat is not sufficiently real or immediate. In an analogous situation, the Supreme Court found there was no actual case or controversy where respondents brought a civil rights

class action claiming that a magistrate and circuit court judge engaged in a pattern and practice of illegal bond setting, sentencing and jury-fee practices which deprived the class of the rights. *O'Shea v. Littleton,* 414 U.S. 488 (1974). The Court noted that it assumed that respondents will conduct themselves within the law and avoid prosecution. The Supreme Court concluded:

> Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners…. Apparently, the proposition is that if respondents proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.

*O'Shea,* 414 U.S. at 496.

Moreover, in a case similar to this one and cited by Plaintiffs, the U.S. District Court for the Northern District of Illinois did not find standing for a plaintiff pursuing claims on behalf of mentally ill jail detainees, who are released without discharge plans and medication, to manage their illness. As a result, Plaintiffs further content that they then may abuse alcohol or drugs, may commit new crimes and be arrested and incarcerated, or may be hospitalized or otherwise institutionalized. The Court held that the alleged injuries are not concrete, particularized and actual or imminent. *Bolden, et al. v. Stroger, et al,* Case no. 03C5617, Memorandum Opinion and Order (N.D. Ill February 1, 2005) (Doc. 22-2, attached as Ex. B. to Doc. 22.) Relying upon the *Lyons* decision, the district court found that these alleged injuries are too "hypothetical and speculative" to establish standing to pursue injunctive and declaratory relief against defendants.

Here, the Plaintiffs are asking this Court to venture into the area of speculation and conjecture. Whether Plaintiffs commit new crimes and are arrested, then incarcerated is not

4

imminent, but is speculative and hypothetical. As the Supreme Court noted in *O'Shea,* it is assumed that plaintiffs will conduct their activities within the law. These Plaintiffs have failed to identify an injury in fact to show that they have standing.

Plaintiff Guy B. is due to be released from ODRC control on October 30, 2010, and claims it is "probable" that he will not receive adequate pre-release discharge planning, which will then "probably" result in him committing another crime, being arrested and convicted and then returned to ODRC custody. (Doc. 16.) What degree of pre-release discharge planning and assistance Plaintiff Guy B. will receive has not yet been determined, as he is not due for release until October 30, 2010. Upon his release, he too would be subject to the same analysis as applied to those already released. Further, as explained in Defendants' Motion for Order to Show Cause, Plaintiff Guy B. did not exhaust his administrative remedies prior to filing his lawsuit, and that administrative remedy of filing a grievance provides him the opportunity to voice concerns with the sufficiency of pre-release discharge planning and assistance.

**2. Plaintiffs fail to establish that any alleged injury can be redressed by the requested relief**

The standing doctrine also requires that the requested relief will specifically redress a plaintiff's identified injury. *Warth v. Seldin,* 422 U.S. 490, 505, 508 (1975). The released Plaintiffs cannot and have not shown that their alleged injuries can be redressed by the specific request for injunctive relief. Because they are not currently in the custody of ODRC, they are not eligible to receive any pre-release discharge planning. The requested injunctive relief would have no personal effect on the released Plaintiffs and the redressability requirement for standing is not met. Similarly, Plaintiff Guy B.'s alleged injuries could be redressed by the administrative grievance process or by the timely completion of the pre-release assistance process, but not by prospective declaratory and injunctive relief. If the Plaintiffs did win, they would win nothing.

In their Memorandum in Opposition, Plaintiffs point to the putative class of plaintiffs to satisfy the redressability requirement. However, each named Plaintiff must have independent and sufficient standing; this requirement is not changed for class action cases. *Lewis v. Casey,* 518 U.S. 343 (1996). Plaintiffs argue that because they may at some time be certified as class representatives for prisoners still incarcerated and due to be released, that the redressability requirement can be met through the existing inmates. Such an argument is incorrect; each named Plaintiff must meet all three requirements for standing, without looking to unnamed potential class members, particularly when class certification has been neither moved for, nor granted.

### 3. **Plaintiffs fail to demonstrate that alleged injuries, if any, were caused by ODRC or ODMH's actions or inactions.**

To have standing, Plaintiffs must also allege that their injury is caused by Defendants in a non-speculative and non-attenuated manner. *Lujan,* 504 U.S. at 560-61; *Goins v. Department of Defense,* 1999 U.S. App. LEXIS 826 (6th Cir. 1999). A link that is too attenuated or relies on speculated conduct by a defendant will not suffice for plaintiffs to have standing. *Goins*. A link that relies on the speculated conduct by a plaintiff would also not satisfy standing requirements.

Plaintiffs simply state that the potential injury resulting from being reincarcerated is "traceable" to Defendants' actions, but such a statement is incorrect. (Doc. 23, p. 7.) As discussed above, the injuries claimed by Plaintiffs rely on the pure chance that they may commit a felony offense, be arrested and then convicted, sentenced to more than a year of incarceration and ultimately returned to the custody of ODRC. Once in prison, they may need pre-release discharge assistance, and they may be denied such pre-release discharge assistance. Such an occurrence is not only highly speculative, but is too attenuated to be connected to the actions of Defendants. Such results also depend not only on Plaintiffs' conduct, but on the actions of third parties not associated with this suit, such as members of the criminal justice system, which holds

individuals accountable and responsible for their own actions. To establish standing to sue two state agencies and their Directors based upon the possible future felonies committed by ten individuals, contradicts the causation requirement of the standing doctrine. All ten Plaintiffs fail to show a causal link for any alleged injury and Defendants' ability to act for standing.

    **4.**    **Plaintiffs do not have standing, nor do they present claims worthy of the capable-of-repetition exception to the standing doctrine.**

Plaintiffs do not satisfy the requirements for the capable-of-repetition exception[1]. (Doc 23, p. 9.) The capable-of-repetition doctrine applies only in exceptional situations. *Spencer v. Kemna*, 523 U.S. 1, 17 (1997) (*citing Lyons*). The exception permits review of the case under Article III when two circumstances occur: (1) the action is in its duration too short to be fully litigated prior to cessation or expiration and (2) there is reasonable expectation that the same complaining party will be subject to the same action again. *Spencer.*

Plaintiffs are incorrect in claiming that their case is inherently transitory and worthy of the exception to standing, by alleging that only a forty-five day window exists in which their injuries may accrue before their release.[2] Such a small window of time only highlights why this case is not properly before the judiciary. ODRC's administrative grievance process addresses current prisoners' concerns and that must be exhausted before seeking relief through a §1983 action, pursuant to the Prison Litigation Reform Act. *Jones v. Bock,* 549 U.S. 199, 200 (2007); *Booth v. Churner,* 532 U.S. 731 (2001); Prison Litigation Reform Act, 42 U.S.C. §1997e(a). That process provides the opportunity to address any concern about pre-release discharge planning or any other issue while in ODRC's custody. Additionally, in *Spencer,* the Court found

---

[1] The capable-of-repetition exception is used to permit an Article III court to review a case that is otherwise moot. *Spencer v. Kemna,* 523 U.S. 1, 17 (1997).
[2] Plaintiffs simply assert that they only have a 45 day window to raise a claim before being released, however they cite no authority to support this allegation. Additionally, no reference to this 45 day window is made in the Amended Complaint.

that the case was not inherently transitory because it could not be shown that the time between parole revocation and expiration of prison sentence is always so short to evade review. 523 U.S. at 18. Here, too, Plaintiffs cannot show that the time before release in which certain accommodations are requested to prepare for release is too short for any relief.

Plaintiffs also erroneously claim that there is a reasonable expectation that the same complaining party will be subject to the same action again. "The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the test [for this exception]." *Murphy v. Hunt,* 455 U.S. 478, 482 (1982). In *Spencer,* the Supreme Court rejected the premise that there was a reasonable likelihood that the plaintiff would once again be paroled and have the parole revoked. 523 U.S. at 18. As established above, Plaintiffs are not expected to be subject to the same alleged injury again, unless they themselves commit criminal acts and are ultimately sentenced to state prison. This exception to the standing doctrine does not eliminate the basic principle of how likely the injury is to occur or to occur again. And, possible rearrest is too speculative to give a plaintiff standing. *Spencer,* at 16 (*citing O'Shea, supra)*. This case is not an exceptional situation. The exception does not confer standing on Plaintiffs because there is no reasonable expectation or probability that those same Plaintiffs will be reincarcerated.

For support, Plaintiffs try to apply a <u>footnote</u> in *Olmstead v. L.C. ex rel. Zimring,* as an example of applying the capable-of-repetition doctrine. 527 U.S. 581 (1999). However, the instant matter is quite different from the *Olmstead* case. In *Olmstead,* the likely repeated event was the hospitalization or institutionalization of mentally retarded individuals, not the reincarceration of former inmates. There, although the individuals were receiving treatment in community based programs, because of their permanent condition of developmental disabilities, there had been multiple institutional placements. By contrast in this case, Plaintiffs argue they

8

are likely to return to ODRC's control because they will probably commit another felony. The exception to standing does not apply to this case because the same parties will not likely be subject to the same conduct, unless they act or make choices that cause reincarceration.

Plaintiffs allude to special circumstances which excuse the lack of standing for class actions, but they cite no law whatsoever to support this assertion. In class action cases, all named Plaintiffs must independently have standing and cannot rely on members of the class to provide standing. *Lewis v. Casey,* 518 U.S. 343 (1996). Plaintiffs reference *Sosna v. Iowa,* which specifies that a named plaintiff in a class action lawsuit must have a live case or controversy when filing the complaint, when certified as a class, and when reviewed by an appellate court. 419 U.S. 393, 403 (1975). Plaintiffs should not be granted any exception simply because they hope to, at some point, be certified to represent a class of unnamed plaintiffs.

Without meeting the requirements of Article III of the U.S. Constitution, these Plaintiffs simply present no judicially cognizable injury and no case that is appropriate for a federal court.

**C.    Plaintiffs failed to state a claim under the Americans with Disabilities Act or the Rehabilitation Act.**

Plaintiffs have failed to sufficiently plead their claims under Section 504 of The Rehabilitation Act ("Rehabilitation Act") and Title II of the Americans with Disabilities Act ("ADA") because they have failed to plead at all that Defendants' alleged discrimination was ***because of*** Plaintiffs' disabilities. As Plaintiffs point out, it is sufficient to (1) offer evidence that the defendant actually considered the disability in taking the adverse action, (2) show that the defendant could have reasonably accommodated the disability, but refused to do so, or (3) rely on the disparate impact theory. *McPherson v. Michigan High Sch. Ath. Ass'n.,* 119 F.3d 453, 460 (6th Cir. 1997); (Doc. 23, p. 11). Nothing in the Amended Complaint specifies a claim under the first and second methods of showing that Defendants intentionally discriminated against

9

Plaintiffs in their alleged actions.  Plaintiffs do not specifically state whether or not they attempt to assert a claim of intentional discrimination, but only reference the disparate impact theory in their Memorandum in Opposition. (Doc. 12, p.13.)  To the extent that Plaintiffs attempt to bring a claim of intentional discrimination under the Rehabilitation Act and the ADA, it still fails for the reasons stated in the Motion to Dismiss.  The Amended Complaint does intermittently reference a disparate impact on individuals with serious psychiatric disabilities. (Doc. 16, ¶5.)  However, the claims are unsupported by facts and are simply baseless legal conclusions, which do not meet the *Iqbal* standard, as described in the Motion to Dismiss and in the sections above.  Plaintiffs have failed to sufficiently plead their claims under the Rehabilitation Act and the ADA.

**D.    Plaintiffs failed to state a claim under the Medicaid Act.**

Defendants have argued that Defendants ODRC and ODMH are not persons that can be liable under §1983 and thus should be dismissed from all §1983 claims in the Amended Complaint. *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989).  Plaintiffs only argue that the other two Defendants, Director Moore and Director Stephenson are considered persons who may be liable under §1983, which is not a point that Defendants raise in the Motion to Dismiss.  Plaintiffs do not refute that Defendants ODRC and ODMH are not persons that can be liable under §1983.  Because "a State is not a person within the meaning of §1983", Defendants ODRC and ODMH must be dismissed from the third, fourth, fifth and sixth causes of action.

Second, Plaintiffs fail to show what statute or case establishes a responsibility in either ODRC or ODMH to complete the mandated tasks in 42 U.S.C. §1396a(a)(8).  Plaintiffs do not dispute that the statute establishes the mandated framework for the State Plan for Medicaid.  However, Plaintiffs cannot provide any legal basis to extend the obligations under §1396a(a)(8) to two state entities whose administer correctional facilities in Ohio and oversee mental health services

10

in Ohio. Neither ODRC nor ODMH controls who is awarded Medicaid benefits. Ohio Rev. Code §5111.01; *see also,* Ohio Rev. Code §§5120, 5119.02, 5119.06; (Doc. 19, pp. 13-15).

Plaintiffs point to *West Side Mothers v. Olszewski,* 454 F.3d 532 (6th Cir. 2006), as authority that all individuals must be given the opportunity to apply for Medicaid benefits. (Doc. 23, p. 14.) However, Plaintiffs grossly mischaracterize what that case stands. In *West Side Mothers,* the court found two state agency employees responsible for providing medical services to eligible individuals liable for failing to provide medical services. The court held that there is a private right of action under 42 U.S.C. §1396a(a)(8), but did not hold that all state officials who may remotely be tied to the Medicaid program can be sued for any shortcoming of the program through this one statute. *Id.*

Plaintiffs cited no legal authority that creates an affirmative obligation for any Defendant in this action, under 42 U.S.C. §1396a(a)(8). That statute only mandates certain responsibilities to the **single state agency** that is charged with the creation of the State Plan for Medicaid. Neither ODRC, nor ODMH, nor its directors have the responsibility for creating the State Plan for Medicaid, nor any other responsibility that can be read in §1396a(a)(8). Ohio Rev. Code §5111.01.

Finally, Plaintiffs make many inconsistent and incorrect allegations supporting their claim under §1396a(a)(8). Plaintiffs state that ODRC staff determines eligibility of applicants for Medicaid, which is wholly untrue. (Doc. 23, p. 14.) The Ohio Department of Job and Family Services and the county boards of Job and Family Services determine eligibility for Medicaid benefits; they have not delegated that power to ODRC or ODMH. Ohio Rev. Code §5111.01. Plaintiffs also misconstrue ODRC policy 78-REL-01, stating that, ODRC staff assist inmates with serious medical issues in applying for Medicaid benefits, and assuming without any support, that this policy does not consider mental illness a serious medical issue or that ODRC only assists inmates with serious medical issues in applying for Medicaid benefits. Plaintiffs also

mischaracterize the Partnership Agreement between ODRC and ODMH, by stating that the agreement requires ODMH to assist qualified inmates with a Medicaid application, without recognizing that the Partnership Agreement only requires Defendants to assist those inmates who qualify for Community Linkage <u>and</u> who already have been approved for Social Security benefits. Finally, Plaintiffs erroneously describe ODRC Policy 07-ORD-14, by stating that the ROMPIR policy of reinstating Medicaid benefits for inmates who have been incarcerated for less than a year shows that ODRC has delegated authority under the Medicaid Act. However, that automatic reinstatement of benefits for inmates is mandated by Ohio Rev. Code §5111.0119; it is not an example of obligation under the Medicaid Act. These inconsistencies and misstatements highlight how flawed Plaintiffs' claim is that Defendants have any legal obligation under §1396a(a)(8).

**E.** **Plaintiffs fail to state a claim under the Food Stamp Act.**

Plaintiffs fail to show that a private right of action exists in the specifically cited sections of the Food Stamp Act. Furthermore, even if a private right of action were found in the two cited provisions of the Food Stamp Act, Plaintiffs fail to show that those provisions create any legal obligation for Defendants ODRC, ODMH or on the Defendant Directors.

**1.** **The Food Stamp Act does not create a private right of action under §1983.**

To find a private right of action through §1983, a Court must find that Congress clearly and unambiguously intended to do so. *Gonzaga University et al. v. Doe,* 536 U.S. 273, 283-85 (2002). The Sixth Circuit has stated that the bar is especially high when the statute on which a Section 1983 claim is based arises from Congress' exercise of its power under the Spending Clause, which is the case with the Food Stamps Act. *Hughlett v. Romer-Seneky*, 497 F.3d 557, 565 (6th Cir. 2006) (citing *Gonzaga*, 536 U.S. 273-74) (emphasis omitted); *see also Bruggeman v. Blagojevich*, 324 F.3d 906, 910-11 (7th Cir. 2003) (because "Medicaid is a payment scheme,

12

not a scheme for state-provided medical assistance," §1983 claims based on the Medicaid statute are disfavored "given the Supreme Court's hostility, most recently and emphatically expressed in *Gonzaga University v. Doe*, to implying such rights in spending statutes").

Plaintiffs claim that the Food Stamps Act creates a private right of action under the three pronged test in *Blessing v. Freestone.* 520 U.S. 329 (1997) (establishing that to be a privately enforceable right, a federal statute must (1) be intended to benefit the individual seeking to enforce it; (2) be a binding obligation on the governmental unit in the suit, and (3) not be so vague and amorphous as to be beyond the competence of the judiciary to enforce).  However, neither 7 U.S.C. §2020(e)(2)(B)(i) nor 7 U.S.C. §2020(e)(3) meet the first two prongs of this test.  As discussed below and in Defendants' Motion to Dismiss, the Food Stamp Act sets forth the requirements for establishing a valid state food stamp program and spells out the requirements for the state agency that administers that program.  The statute does not create rights to be enforced by individuals, but rather establishes what features of a food stamp program must be established in order to receive federal funding for the program.  Also, these statutes fail under the second *Blessing* prong because even if there were a binding obligation on a governmental unit, no obligation whatsoever is conferred on ODRC or on ODMH.  All requirements in the Food Stamp Act are conferred on the state agency that establishes the food stamp program, which is not ODRC or ODMH.

Additionally, in *Blessing*, the Supreme Court deemed the language of a statute involving a federal grant program similar to the Food Stamps Act insufficient to create individual rights.  There, to qualify for federal funds, States needed to "operate a child support enforcement program that conform[ed] with the numerous requirements set forth" in the statute, and to "do so pursuant to a detailed plan that has been approved by the Secretary."  520 U.S. at 333.  The Court unanimously held this failed to confer on child support beneficiaries "an individual

entitlement to services." *Id.* at 343. Mere federal "mandates" that a State program contain certain features do not "give rise to federal rights" to enforce compliance through Section 1983. *Id.* at 345; *see also Gonzaga*, 536 U.S. at 281.

Nothing in the Food Stamp Act suggests that Congress intended for the Food Stamp Act to create a private right of action as a remedy for private citizens. In fact, two separate remedies were affirmatively created to deal with non-compliance by the state agency under the Food Stamp Act. First, Congress created a review process of the state agencies' compliance with requirements under §2020, in which the Secretary of Agriculture can investigate and require correction, with the option of referring the case to the Attorney General to seek injunctive relief. 7 U.S.C.S.§2020(g). Second, various administrative procedures have been created to address complaints by applicants or recipients. *See e.g.*, 7 C.F.R. 271.6, 7 C.F.R. 272.6, 7 C.F.R. 273.15, O.A.C. 5101:6. Because there are multiple outlets for citizens to complain about or obtain relief from a state agency's non-compliance with its obligations in administering a food stamp program, Congress did not intend to create a private right of action under 7 U.S.C.S. §2020(e).

### 2. The Food Stamp Act creates no legal obligation for Defendants.

Furthermore, Plaintiffs fail to show or make a compelling argument in the Memorandum in Opposition that the statutes cited create a legal obligation for ODRC, ODMH, or on their Directors. The two statutes that Plaintiffs rely on, 7 U.S.C. §2020(e)(2)(B)(i) and 7 U.S.C. §2020(e)(3) only establish the requirements for creating a Food Stamp program in states and set forth requirements for the state agency that creates and administers that program. Neither ODRC, nor ODMH has the responsibility of creating or administering the food stamp program.

14

**F.     Plaintiffs failed to state a claim under the Eighth Amendment.**

In their Food Stamp claim, Plaintiffs try to graft onto that statutory scheme a claim for relief not intended by Congress. In their Eight Amendment Claim, they try to craft a theory of relief that is unsupported by law. Defendants established in their Motion to Dismiss the Amended Complaint that neither Defendant Sandra Stephenson nor the Ohio Department of Mental Health ("ODMH") confines any prisoners. (Doc. 19, p. 21, citing Ohio Rev. Code § 5120.01.) Plaintiffs did not dispute this, noting only that a contract exists between ODMH and the Ohio Department of Rehabilitation and Correction ("ODRC"). (Doc. 23, p. 23.) However, the existence of a contract does not define who has a constitutional obligation to provide for a confined person's minimal necessities. That obligation is defined by the rights in the constitution and case law interpreting that constitution. *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992) ("The State cannot avoid its constitutional responsibilities by delegating a public function to private parties.") If Plaintiffs seek to impose liability against any defendant who is not tasked with confining felons, this Eighth Amendment claim must fail.

Next in their efforts to bolster the vitality of their Eighth Amendment claim, Plaintiffs note that Defendants did not contest the requisite knowledge element of a deliberate indifference claim. (Doc. 23, p. 27.) However, the instant Motion to Dismiss is neither an Answer nor a stipulation of facts, and any allegation not addressed in that Motion is not an admission.

Last in their attempt to salvage the Eighth Amendment claim, Plaintiffs contend case law establishes a duty by the State to provide for life's minimal necessities beyond the prison walls. (Doc. 23, p. 27.) They fail to cite any case law that actually supports their claim.

By citing *Davis v. Brady*, 143 F.3d 1021, 1026-7 (6th Cir. 1998), Plaintiffs inadvertently admit that they have no viable Eighth Amendment claim. *Davis* is a substantive due process

15

case involving the following events.  The plaintiff in *Davis* had been arrested at night by city police officers as a result of his being inebriated.  He was taken to the local jail by two city police officers, but they found the jail to be full.  Despite being given instructions to release the plaintiff at the jail, the transporting city police officers took plaintiff outside of the city's limits and released him at the entrance to a beach along a 55-mph road with no sidewalk and few street lights.  Later, the plaintiff was struck by a passing motorist, lost part of one leg and was left permanently partially paralyzed.  *Davis*, 143 F.3d at 1021-4.

*Davis* held that a duty arose at the time of arresting plaintiff to provide him with life's minimal necessities, to include reasonably providing for his safety.  *Davis*, 143 F.3d at 1024.  Relying upon *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989), which the Plaintiffs also cited in their opposition, the *Davis* Court explained why such a duty arose: "'The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, **but from the limitation which it has imposed on his freedom to act on his own behalf.**'"  *Davis*, 143 F.3d at 1024, quoting, *DeShaney*, 489 U.S. at 200 (emphasis added).  If no limits exist to act on one's own behalf, the state has no duty to protect or provide for a person in free society.  Plaintiffs' opposition to the pending Motion to Dismiss does nothing to negate this binding rule of law.  Neither *Davis*, nor *DeShaney* create a duty Defendants owe the Plaintiffs to provide pre-release services while incarcerated or any life's minimal necessities when released.

To determine whether any duty exists for the State to provide for life's minimal necessities, the Supreme Court and the Sixth Circuit look at (1) whether a custodial relationship exists of the harm and (2) whether the State has imposed any restrictions upon the ex-inmate's

16

ability to provide for his or her life's minimal necessities. *Id.* Here, the freed Plaintiffs have no restrictions imposed by the State limiting their ability to seek life's minimal necessities.

Finally in this area, Plaintiffs also rely upon *Wakefield v. Thompson*, 177 F.3d 1160, 1164-5 (9th Cir. 1999), for the proposition that state officials have a duty to provide for life's minimal necessities beyond the prison walls. In *Wakefield*, a mentally ill inmate was released without a fourteen day supply of psychotropic medications his prison psychiatrist had prescribed. Eleven days after his release, he decompensated, went into a violent rage and was re-arrested. *Wakefield*, 177 F.3d at 1162. The Ninth Circuit concluded prison officials must provide a transitional supply of medicines. *Wakefield*, 177 F.3d at 1164. Any failure otherwise, "amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs." *Wakefield,* 177 F.3d at 1164.

*Wakefield* is inapplicable here. As asserted in the Amended Complaint, Plaintiffs already receive a fourteen day supply of their medications prior to discharge. (*See* Doc. 16, ¶¶ 19, 33, 89 and 118.) Further, the Sixth Circuit already has recognized that,

> the Supreme Court [in *DeShaney*] held that "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." [*DeShaney*, 489 U.S.] at 201.

*Davis*, 143 F.3d at 1025, citing *DeShaney*, 489 U.S. at 201. The Sixth Circuit already recognizes that at some point, the state's obligation to provide for life's minimal necessities does end; it ends upon release from prison when a mentally ill inmate is released with a transitional supply of medication. *Wakefield* does not support the Eighth Amendment claim, which must fail.

**G.     Plaintiffs failed to state a claim under the Due Process Clause.**

Defendants established in their Motion to Dismiss that Plaintiffs have no current property interests to which due process protections would apply. (Doc. 19, p. 22-4.) In response,

Plaintiffs only assert in summary fashion that their social welfare benefits were cut off after they were incarcerated, and that the benefits would have been continued but for their incarceration and have been denied to them only because of inaction by Defendants. (*See* Doc. 23, p. 28.)

Plaintiffs' argument fails because it disregards an important element of any § 1983 action. A plaintiff must show that a defendant deprived him or her of a right or protection afforded by either the federal constitution or other federal law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-7 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Plaintiffs' social welfare benefits ended upon their incarceration that occurred due to some felony each Plaintiff had committed. Those benefits ended due to the actions of a third party agency, not due to any party to this lawsuit. With such misdirected blame, Plaintiff relies upon speculation and supposition that fails to move their Amended Complaint from the realm of the possible to what is plausible for the *Iqbal* standard established above and in the instant Motion to Dismiss.

**H.     In their constitutional-based claims, Plaintiffs rely upon negligence as a theory of liability, which is insufficient for claims presented under 42 U.S. § 1983.**

Defendants last argued in their pending Motion to Dismiss that Plaintiffs' constitutional claims should be dismissed due to the reliance on negligence as a theory of recovery. (Doc. 19, p. 24-5.) In response, Plaintiffs did not negate that argument, offering only that more than negligence is being asserted as the basis for liability under § 1983. (Doc. 23, p. 39.)

Plaintiffs failed to address the pleading deficiencies identified in the Motion to Dismiss. For example, Plaintiffs never explained how Plaintiff Al G. has asserted the requisite level of liability. Plaintiff Al G. never received "effective" assistance for pre-release planning, indicating he received some pre-release planning. (*See* Doc. 19, p. 25, citing Doc. 16, ¶ 66.) Plaintiffs did not negate other instances of alleged a disagreement with services provided by Defendants. (*See*, *e.g.*, Doc. 19, p. 25, citing Doc. 16, ¶¶ 32, 33, 66, 78, 101, 111-2, 157 and 214.)

In at least those instances, Plaintiffs assert that they disagree with the type of services provided when they allege Defendants did provide them with pre-release services. Plaintiffs simply would perform such services differently, which raises at most a claim of negligence. Negligence alone does not establish a violation of a federally protected right under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (Liability under the Eighth Amendment requires more than a lack of ordinary care for an inmate's health or safety), citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Since negligence alone supports Plaintiffs' constitutional claims, the Amended Complaint must be dismissed.

### III. Conclusion

For the foregoing reasons and for the reasons stated in the Motion to Dismiss Amended Complaint, all Defendants respectfully request that the Amended Complaint be dismissed.

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General

/s/ *Roger F. Carroll*
ROGER F. CARROLL (0023142)
*Trial Counsel*
Roger.Carroll@ohioattorneygeneral.gov
/s/ *Elizabeth G. Hartnett*
ELIZABETH G. HARTNETT (0084259)
*Co-Counsel*
Elizabeth.Hartnett@ohioattorneygeneral.gov
Health and Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio 43215-3248
Telephone: (614) 466-8600
Facsimile: (614) 466-6090
*Counsel for Defendants Sandra Stephenson and the Ohio Department of Mental Health*

/s/ *J. Eric Holloway*
J. ERIC HOLLOWAY (0063857)
*Trial Counsel*
Eric.Holloway@OhioAttorneyGeneral.gov
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 644-7233
Fax: (614) 728-9327
*Counsel for Defendants Ohio Department of Rehabilitation and Correction and Ernie Moore*

## **Certificate of Service**

I certify that, on July 30, 2010, a copy of the foregoing *Defendants' Reply Supporting their Motion to Dismiss* was filed electronically. Parties may receive their copy through the Court's ECF system.

s/ *Elizabeth G. Hartnett*
Elizabeth G. Hartnett