UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Serenity L., et al.,                    :    Case No. 1:10-cv-076
                                        :
        Plaintiffs,                     :
                                        :
vs.                                     :
                                        :
Ohio Department of                      :
Rehabilitation and Corrections,         :
et al,                                  :
                                        :
        Defendants.                     :


**ORDER**

Before the Court is the Defendants' motion to dismiss
Plaintiffs' amended class action complaint under Fed. R. Civ. P.
12(b)(1) and (b)(6).  (Doc. 19)  Plaintiffs oppose the motion
(Doc. 23), and Defendants have filed their reply.  (Doc. 25)
Defendants have also filed a motion for an order to show cause
why Plaintiff Guy B.'s claims should not be dismissed for failure
to exhaust his administrative remedies.  (Doc. 20)  Plaintiffs
oppose this motion (Doc. 22), and Defendants have filed their
reply.  (Doc. 26)

**FACTUAL BACKGROUND**

The First Amended Complaint generally alleges that the ten
named Plaintiffs are indigent Ohio residents who suffer from
various psychiatric conditions and illnesses.  Each Plaintiff has
been incarcerated in the past in an Ohio prison under the

-1-

auspices of the Ohio Department of Rehabilitation and Correction ("ODRC").  Plaintiff Guy B. was incarcerated when the First Amended Complaint was filed.  Plaintiffs allege that, without proper treatment, their psychiatric disabilities and disorders seriously interfere with their basic life abilities.  Plaintiffs are qualified for various re-entry programs and services such as parole, conditional release or post-release supervision. Plaintiffs require accommodations in the form of appropriate services and pre-release planning to successfully transition from incarceration to the community.  They also require disability accommodations to assist them in applying for and obtaining public benefits for which they are eligible.

    Plaintiffs allege that Defendants fail to provide these accommodations, preventing them from making a successful transition to the community.  Plaintiffs seek declaratory and injunctive relief against Defendants to "... insure that class members receive the accommodations, including but not limited to 'sufficient supplies of medication, connections to mental health and other support services, and housing,' to which they are entitled under the law."  (Am. Compl. at ¶5)

    Paragraphs 6 through 100 of the Amended Complaint describe the circumstances of each of the ten named Plaintiffs.  These allegations generally include background information about Plaintiffs, their psychiatric histories and diagnoses, and in

many cases describe undeniably tragic backgrounds.  Many of the
Plaintiffs have experienced repeated hospitalizations, as well as
incarceration in various jails and prison facilities on various
offenses.  For example, Serenity L. alleges that she gave birth
to a child at 16, and was incarcerated for the first time in her
early 20's following the death of another child, as well as her
brother, her father, and her step-mother.  She has been diagnosed
with bipolar disorder, post-traumatic stress disorder and
schizophrenia.  She has had several stays in drug rehabilitation
programs, and has been in almost continuous contact with the
criminal justice system since her first incarceration.  Her most
recent release from ODRC's custody was in November 2008, when she
was placed on post-release control until November 2009.  She
currently resides in Xenia, Ohio.  Prior to her release from
prison, she alleges that ODRC did not provide her any discharge
planning or assistance in completing benefits applications.  She
had no source of income upon her release, and she fears that she
will not be able to maintain psychiatric stability, which she
believes will result in her reincarceration.

Anthony G. alleges he was released from Oakwood Correctional
Facility on March 20, 2009, and he is currently committed at
Summit Behavioral Healthcare in Cincinnati.  He has a lengthy
history of mental illness, as well as alcohol and drug abuse.  He
has been institutionalized for most of his adult life, has been

-3-

incarcerated twice before in an Ohio state prison, and several times in county jails.  He has taken various psychotropic medications over the years, and without medication he manifests disturbing behaviors such as exposing himself, emitting loud outbursts and screams, urinating in public, and digging through other people's belongings.  He has been placed on suicide watch while institutionalized.

When he was released from ODRC's custody in March 2009, he alleges that ODRC left him at an emergency shelter.  He did not receive any substantive pre-release planning, despite ODRC's own assessment that he needs "close case management services as he is lower functioning ...".  (Am. Comp. ¶19)  He was not linked with a case worker, was not provided assistance in locating housing, and was given only a 14-day supply of his essential psychotropic medications.  A shelter social worker noticed his distress and assisted him in getting medications and filling out benefit applications.  Nevertheless, about three weeks later, he announced at a food bank that he had a gun.  He was delusional at the time and did not actually have a gun, but he was arrested for inducing panic.  He remained incarcerated at the county jail for a month, found to be incompetent, and transferred to Summit.  He alleges that if he is released again without sufficient assistance and planning, he will likely reoffend due to his mental disabilities.  (¶¶14-25)

-4-

Diane F. was most recently released from prison in December 2009; she has had six previous periods of incarceration over the past ten years.  She has been diagnosed with schizophrenia and bipolar disorder, and has suffered their incapacitating effects for most of her adult life.  She also abuses drugs and alcohol when her psychological symptoms become unmanageable.  Proper medication allows her to remain calm, coherent, and stable.  She has never been provided with assistance in applying for benefits during her prior terms of incarceration.  After her latest release, she was returned to her drug-infested Cuyahoga County neighborhood, despite her requests to be sent to a halfway house in Montgomery County.  Her requests for assistance with benefit applications were denied.  She alleges the lack of appropriate pre-release planning causes her increasing anxiety and fear that she will decompensate and reoffend.  (¶¶39-44)

Alan G. is 47 years old and was released from prison in January 2009.  He was homeless until May 3, 2010 when he was convicted of theft and breaking and entering, after he was seen scrounging for scrap metal in a dumpster.  When the amended complaint was filed, Alan was awaiting sentencing.  He suffers from bipolar disorder, schizophrenia, antisocial disorder and post-traumatic stress disorder.  He has taken several psychotropic medications and currently takes Seroquel, which helps stabilize his condition.  He suffers from severe

reoccurring hallucinations which are eased by regular medication. He states that he will resort to street drugs to "self medicate" when he is not able to maintain a stable course of proper medication. He has been incarcerated six times, and is currently on post-release control. He has never received any comprehensive discharge planning, was not offered help in applying for benefits, and was not linked to a case worker or a local agency for assistance upon release. The last time he was released from ODRC custody he was given a two-week supply of medication. He alleges that it is highly likely he will be reincarcerated due to ODRC's repeated failure to assist him with proper and necessary pre-release planning services. (¶¶61-70)

The allegations concerning each of the other named Plaintiffs include similar details. For instance, Alice G. did not receive any discharge planning or referrals to mental health professionals following her October 2008 release. She was fortunate to obtain services through a community re-entry program and her condition stabilized. John V. was released without adequate discharge planning or assistance from ODRC in February 2010, and now resides at a VA Hospital. He alleges he contacted the VA out of desperation because ODRC failed to provide him with any assistance, other than a fourteen day supply of medication.

Plaintiff Guy B. was incarcerated when the amended complaint was filed, and was due to be released in October 2010. He has

-6-

exhibited a pattern of release from incarceration, followed by reoffending behavior which has resulted in his reincarceration. He has been diagnosed with bipolar disorder and schizophrenia, and requires consistent medications to control symptoms such as verbal hallucinations, paranoia, and suicide attempts. He had not yet received discharge planning at the time the amended complaint was filed, and he alleges that he does not know where he will go to seek assistance upon his release. (¶¶ 92-100)

The Defendants are the Ohio Department of Rehabilitation and Correction and its Director, Ernie Moore, and the Ohio Department of Mental Health and its Director, Sandra Stephenson. Both individuals are sued in their official capacities only. ODRC is generally responsible for Ohio's prison system; ODMH is charged with oversight and administration of public mental health services across Ohio. ODRC developed and administers "The Ohio Plan," which is intended to promote successful reintegration of prison inmates into their home communities. (¶111)

ODRC's Offender Transitional Release Plan sets forth procedures governing pre-release planning that are meant to facilitate an offender's successful release. Plaintiffs allege that when prisoners with psychiatric disabilities are released without reasonable accommodations that would allow them access to public programs and benefits, the goals of successful transition and community re-entry are thwarted. (¶113) ODRC's Offender

-7-

Transitional Release Planning policy states that ODRC staff
should determine whether inmates may qualify for public benefits
such as Social Security disability, Medicaid, Medicare, and/or
food stamps.  Released inmates are also given a fourteen-day
supply of necessary psychotropic medications, and a list of
community medical referral sources for follow-up care. (¶¶115-
116)  While ODRC thus acknowledges the need for pre-release
planning, Plaintiffs allege that ODRC releases prisoners with
psychiatric disabilities from the highly structured prison
environment to the community, on a faulty assumption that they
will be self-sufficient.  (¶¶117-118)

        According to the amended complaint, ODRC delegated to ODMH
some of its obligations to provide pre-release discharge planning
for inmates with psychiatric disabilities.  ODMH is responsible
for ensuring that these inmates complete Medicaid applications
prior to their release, and sending the applications to the
proper county's Medicaid agency for processing.  Plaintiffs
allege that neither ODRC nor ODMH ensures that inmates are
provided with a sufficient supply of medication to manage the
transition period from their release from incarceration to their
enrollment in Medicaid.  Providing reasonable accommodations,
including requiring completed benefit applications, connecting
inmates directly to community mental health service providers,
and providing an "adequate supply" of medications, would allow

Plaintiffs and the class they seek to represent to successfully transition from incarceration to the community. Without these services, the abrupt transition from a highly structured prison environment to the community will exacerbate the symptoms of the diseases from which Plaintiffs suffer. (¶¶131-134)

Plaintiffs also allege that the lack of adequate pre-release transition planning services has a disparate impact upon inmates with psychiatric disabilities, making a successful transition back to the community significantly more difficult for them. They allege that Defendants release them from custody without appropriate service referrals, appointments or linkages. Many inmates are unable to see a psychiatrist until after their temporary supply of medications is gone, resulting in gaps in treatment and deterioration of their condition. Plaintiffs allege that additional pre-release planning and assistance is a reasonable accommodation for their disabilities under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. Other reasonable accommodations denied to Plaintiffs are appropriate case management services, and assistance with obtaining mental health services, transportation, medication management, housing, food, and other available community-based services. (¶¶148-167)

Plaintiffs further allege that Defendants fail to submit timely applications for various federal benefits (including SSDI

and food stamps) on Plaintiffs' behalf prior to their release
from incarceration.  Many inmates with psychiatric disabilities
qualify for these benefits, and may have received them prior to
their incarceration. (¶¶169-180)  Many inmates with psychiatric
disabilities wind up in homeless shelters, which pose special
risks due to crowding, stress, or increased risk of attack due to
Plaintiffs' unusual behaviors.  Offenders on post-release control
may risk sanctions if they leave these shelters without
permission, but their uncontrolled symptoms often cause them to
do so.  Plaintiffs allege that Defendants fail to submit timely
applications on behalf of these inmates for public or supportive
housing assistance upon their release. (¶¶182-189)

     The claims and the relief Plaintiffs seek are set forth in
Paragraphs 191-229.  Plaintiffs seek declaratory and injunctive
relief, and none of them assert claims for actual damages.  Their
first claim, under the Americans with Disabilities Act, alleges
that Defendants have failed to provide reasonable accommodations
for Plaintiffs' disabilities, which has caused Plaintiffs an
increased risk of reincarceration, due to their inability to
conform their conduct to the requirements of the law.
Plaintiffs' second claim, under Section 504 of the Rehabilitation
Act, alleges that Defendants discriminate against Plaintiffs by
failing to ensure that Plaintiffs submit benefit applications,
and by the failure to provide the various post-release transition

planning services alleged in the complaint.  The third and fourth causes of action allege violations of the Medicaid Act and the Food Stamp Act, respectively, alleging Defendants are required to ensure that they have applied for benefits under these programs. The fifth and sixth claims allege Eighth Amendment violations based on Defendants' deliberate indifference to Plaintiffs' serious medical needs, and a violation of their due process rights.  Plaintiffs seek a declaratory judgment that Defendants' practices are unlawful, an order enjoining further violations and requiring Defendants to provide the panoply of pre- and post-release services described in the amended complaint.

Defendants move to dismiss the amended complaint on several grounds.  They primarily argue that Plaintiffs lack standing to sue, because they have not alleged an injury in fact nor established an imminent threat of future harm that can be remedied by an injunction.  Defendants also contend that Plaintiffs' various statutory and constitutional claims are fatally flawed in several respects.

**ANALYSIS**

1. <u>Standard of Review</u>

Defendants' motion is brought under Fed. R. Civ. P. 12(b)(1) and (6).  In reviewing a motion to dismiss under these sub-sections, the Court accepts as true the well-pleaded factual allegations of the complaint.  A claim will survive if those

-11-

allegations are "... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Jones v. City of Cincinnati</u>, 521 F.3d 555, 559 (6th Cir. 2008), citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S.544 (2007).

In <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), the Supreme Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face. Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct. If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id</u>. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556-557).

2. <u>Plaintiffs' Standing</u>

Defendants contend that Plaintiffs lack standing to seek any relief because they have not alleged a sufficient injury in fact, or a threat of imminent or concrete harm. They argue that this Court therefore lacks jurisdiction over all of Plaintiffs' claims. All but one of the Plaintiffs had been released from ODRC's custody by the time the complaint was filed. Plaintiffs allege that they are "afraid" of re-incarceration, or that they are "nervous" or "upset" about their living conditions. Several

Plaintiffs allege an inability to find a job, and others are homeless.  Other Plaintiffs concede that they have obtained mental health services and found places to live, and that they have maintained their psychiatric stability since being released from incarceration.  None of them allege that, since being released, they have been returned to ODRC custody as a result of Defendants' actions or inactions.

Defendants moved to dismiss Plaintiffs' original complaint in this case on similar grounds, arguing that none of the Plaintiffs had standing to pursue their claims for injunctive relief.  (See Doc. 15)  Plaintiffs chose not to respond to the motion and instead filed their amended complaint, which added allegations made solely on information and belief, that all of the Plaintiffs fear an "imminent" threat of reincarceration and returning to ODRC's custody based on Defendants' prior failures to provide them with pre-release planning and services.  Defendants argue that this sort of conclusion does not adequately allege a particularized threat of imminent injury that demonstrates Plaintiffs' standing to seek injunctive relief.

The amended complaint also added the claims of Plaintiff Guy B., who was incarcerated when the amended complaint was filed.  Guy B. alleges that he does not know how he will receive treatment or medication after he is released.  Defendants argue that his alleged "lack of knowledge" and his fears about his

-13-

future do not show an imminent or concrete injury or threat of
harm that can be remedied by Plaintiffs' claims.

In addition, Defendants contend that Plaintiffs have not
alleged facts plausibly supporting their contention that the
conditions Plaintiffs describe - homelessness, delay in receiving
benefits, or impaired access to medical care - were proximately
caused by Defendants.  The causal link between Plaintiffs'
allegations of harm and Defendants' conduct must be more than
speculative.  Here, there are too many other obvious factors that
contribute to such conditions.  For example, Robert W. alleges
that he had been living at a YMCA, but funding was cut for that
housing program.  (¶34)  Many of the Plaintiffs admit to long-
term problems with substance abuse and addiction, which
contributes to the problems they describe.  And the fact that
some of the Plaintiffs may not have received Medicaid or food
stamps immediately upon their release from incarceration cannot
plausibly be attributed solely to ODRC's failure to provide what
Plaintiffs assert is adequate assistance with various benefit
applications.

Moreover, even if a causal link had been adequately pled,
Defendants argue that Plaintiffs' alleged injuries would not be
redressed by the injunctive relief they seek.  It would be sheer
speculation to assume that, at some future point, any of the
Plaintiffs will commit additional serious crimes, be convicted of

-14-

those crimes, and thereafter placed into ODRC custody.  Absent
such a chain of events, none of the Plaintiffs could obtain any
relief from the injunction they seek in this suit.

With respect to Guy B., Defendants' motion for an order to
show cause (Doc. 20) contends that he failed to exhaust his
administrative remedies prior to filing suit.  This failure also
mandates dismissal of his claims pursuant to 42 U.S.C.
§1997e(c)(1), even if his allegations demonstrated his standing
and a plausible basis for an award of injunctive relief.

Plaintiffs do not deny that they must establish their
standing in order to proceed.  The Sixth Circuit has held in that
regard:

> To establish initial standing to bring suit,
> a plaintiff must demonstrate (1) he or she
> has suffered an "injury in fact" that is (a)
> concrete and particularized and (b) actual or
> imminent, as opposed to conjectural or
> hypothetical; (2) the injury is fairly
> traceable to the defendant's challenged
> action; and (3) it is likely, not
> speculative, that the injury will be
> redressed by a favorable decision.

Cleveland Branch, NAACP v. City of Parma, Ohio, 263 F.3d 513,
523-524 (6th Cir. 2001) (internal citations omitted).

The Court must conclude that the Plaintiffs have not
satisfied these requirements.  All of Plaintiffs' claims for
injunctive and declaratory relief are premised upon their fear
that each of them might experience the so-called "revolving door"
of reincarceration.  They allege that they might someday return

-15-

to ODRC's custody solely as a result of Defendants' previous
failure to provide them with adequate pre-release services.
Plaintiffs are "afraid" that, without adequate treatment, they
will commit felonies that will someday return them to ODRC's
custody.  This Court does not doubt that Plaintiffs suffer from
the serious psychiatric conditions they allege.  And the Court
has no trouble accepting the argument that comprehensive pre-
release planning and direct linkage with available community
mental health, housing, transportation, and employment services
would assist inmates with psychiatric diseases in making the
transition from incarceration to the community.  It is no doubt
sound public and penal policy to do so.  But sound public policy
is not a basis for Article III standing, nor for this Court's
assertion of jurisdiction.  The amended complaint fails to allege
the kind of **particularized**, **concrete harm** necessary to confer
standing that is required by the Supreme Court and the Sixth
Circuit.

    In <u>Los Angeles v. Lyons</u>, 461 U.S. 95 (1983), the plaintiff
alleged that a police department's chokehold policy was
unconstitutional.  Plaintiff had been stopped for a traffic
violation and alleged that, without provocation, the officers
applied a chokehold that damaged his larynx.  The district court
entered a preliminary injunction against further use of such
holds in all situations that did not pose a threat of death or

-16-

serious bodily harm to the officer.  On appeal, the Supreme Court
concluded that plaintiff lacked standing to seek injunctive
relief because he did not allege a "real and immediate" threat of
injury from the existence of the policy.  Id. at 102.  The Court
relied on O'Shea v. Littleton, 414 U.S. 488 (1974), which held
that "[past] exposure to illegal conduct does not in itself show
a present case or controversy regarding injunctive relief ... if
unaccompanied by any continuing, present adverse effects."
Lyons, 461 U.S. at 102, quoting O'Shea at 495-496.  While not
doubting Lyons' allegation that he had been illegally choked and
injured by the officers, the court held that his fear that he
might be subject to the chokehold in the future was entirely
speculative and remote.  The court also stated that the
"emotional consequences of a prior act simply are not a
sufficient basis for an injunction absent a real and immediate
threat of future injury by the defendant.  Of course, emotional
upset is a relevant consideration in a damages action."  Lyons,
461 U.S. at 107, n.8.

In Lynch v. Leis, 382 F.3d 642 (6th Cir. 2004), the Sixth
Circuit relied on Lyons to conclude that a plaintiff lacked
standing to challenge a county jail's telephone use policy for
pre-trial detainees.  At the time the plaintiff was added to the
lawsuit, he had been released from pre-trial detention and was on
bond.  After extensive proceedings in the district court,

-17-

resulting in entry of a permanent injunction, the defendant appealed the award of attorney's fees to the plaintiff.  The Sixth Circuit concluded that the plaintiff never had standing to prosecute his claim because he was not subject to the policy when he filed his claim, and vacated the fee award.  The court noted that the risk that plaintiff might be placed in detention again was not a real and immediate threat that conferred standing.  The plaintiff "... would have had to fail to appear for a scheduled court date on his pending matters, violate the conditions of his pretrial release in some other way, or commit some other conduct leading to his arrest.  This chance, based on [plaintiff's] likelihood of violating unchallenged laws, is insufficient to confer Article III standing." <u>Id</u>. at 648.

Similarly, in <u>White v. United States</u>, 601 F.3d 545 (6th Cir. 2010), several gamefowl sellers alleged that sections of the Animal Welfare Act, 7 U.S.C. §§2131-2156, that prohibit the interstate shipment of fighting animals infringed their constitutional rights.  They sought an injunction against its enforcement, arguing they feared false prosecution because animal control officers would assume that the animals they sold were to be used for fighting.  The Sixth Circuit held that plaintiffs lacked standing because they had not demonstrated a sufficient injury in fact:  "[Plaintiffs'] potential false prosecution allegations amount to a claim that, if they transport or sell

-18-

chickens across state lines for non-fighting purposes and if they are stopped by law enforcement authorities, the authorities may misinterpret the plaintiffs' intent and may wrongly prosecute them." Id. at 553.  This chain of events was based on speculation and conjecture, and not upon plausible factual allegations establishing a risk of imminent or concrete harm.

See also, Knox v. McGinnis, 998 F.2d 1405 (7th Cir. 1993), concluding that a prison inmate lacked standing to seek injunctive relief barring use of a "black box" mechanism which was used to secure handcuff locks on inmates placed in administrative segregation.  When the plaintiff filed suit, he had been released from segregation and had returned to the general prison population.  Relying on Lyons, the Seventh Circuit concluded that "the mere possibility that at some point in the future he might be returned to segregation did not establish a "real and immediate case or controversy." Id. at 1413.

Here, all of the Plaintiffs allege that they "fear" that their various psychiatric conditions will lead them to commit future crimes that will again bring them under ODRC's custody and control, and that these fears are the result of Defendants' previous lack of services.  These fears and concerns simply do not allege a real and immediate controversy that confers Article III standing, as the cases discussed above make clear.

Perhaps aware of this flaw in their complaint, Plaintiffs

respond that, even if they lack standing in the "traditional" sense, their claims fall within an exception for cases likely to be repeated but evading judicial review.  They cite Olmstead v. LC, 527 U.S. 581 (1999), which addressed a lawsuit by two institutionalized mentally ill citizens seeking an injunction requiring the state to place them in the "least restrictive environment" that would be appropriate to their condition.  The discussion Plaintiffs cite from that case, contained in a footnote to the Court's opinion on the merits, addressed whether the case was moot, not whether the plaintiffs had standing at the outset.

In that footnote, the Supreme Court agreed with the lower courts that the case was not rendered moot by the fact that both of the plaintiffs were by then receiving less restrictive treatment in community-based programs.  Both the district court and the court of appeals found that the record demonstrated that plaintiffs had experienced continual institutional placements throughout their lives.  One of the plaintiffs had been confined eighteen different times at the same psychiatric hospital, and her current community placement was unstable due to uncertain state funding.  Given her past history, there was a very strong probability that she would be returned by the state to the same inpatient psychiatric hospital absent her lawsuit.  The second plaintiff had been transferred to a community program by court

order after the district court had entered judgment for the plaintiffs.  Due to the permanent nature of plaintiffs' disabling conditions and the facts concerning the state's long-term course of conduct with respect to their care, the Supreme Court agreed with the courts below that the controversy was "capable of repetition, yet evading review," and therefore was not moot.

The facts that Plaintiffs allege here, of their repeated involvement with the criminal justice system in general, are not comparable to the facts regarding the long-term relationship between the plaintiffs and the state that were at issue in Olmstead.  Moreover, the "capable of repetition yet evading review" doctrine applies only where repetition of the challenged conduct is likely to involve the same parties.  Unlike the plaintiffs in Olmstead, Plaintiffs are not under ODRC's custody or control.  Plaintiffs "fear" that they will return to ODRC's custody at some point.  But as discussed above, the chain of events necessary to bring about that result is too remote to assume that it will occur with any certainty.  The question is not whether Plaintiffs' claims are moot, but whether Plaintiffs had Article III standing when they filed their complaint.  The Court must conclude that they did not.

Even if this Court were to conclude that Plaintiffs had standing in something other than a "traditional" sense, as Plaintiffs suggest, it is entirely speculative to conclude that

any of the Plaintiffs (save for the possible exception of Guy B., who was in prison when the amended complaint was filed) would benefit from the injunctive and declaratory relief they seek.  In Knox v. McGinnis, discussed above, the Seventh Circuit noted that, once the plaintiff was returned to the general prison population, the only way he would be re-segregated and subjected to use of the "black box" mechanism was if he broke prison rules sometime in the future.  The court would not assume that Knox would knowingly violate prison rules, even though he had been found with prison contraband on at least two prior occasions.  Here, the Court is unwilling to assume that Plaintiffs will commit felonies in the future, that will result in their convictions, that will return them to ODRC custody, and which would then allow them to benefit from any judgment requiring ODRC to provide the array of comprehensive pre-release services that the Plaintiffs seek.

The Court also finds merit in Defendants' argument that Plaintiffs have not plausibly alleged that the difficulties they have experienced were all caused by Defendants.  There are simply too many factors that contribute to the problems Plaintiffs describe, including access to mental health care, finding safe and affordable housing, or securing transportation or employment. Many of the social or political factors that contribute to these problems are referenced in Plaintiffs' own allegations, such as

public funding difficulties or budget cuts, long waiting lists
for medical appointments for indigents, or inadequate beds in
homeless shelters.  These problems cannot all be plausibly
attributed to the Defendants' failure to provide pre-release
services.

     The same conclusions apply to the claims of Plaintiff Guy B.
He alleges that if he is released without what he contends is
adequate planning and services, he fears that he will reoffend or
will have difficulty securing services for himself.  Defendants
argue that, in addition to his lack of standing, he failed to
exhaust his administrative remedies prior to filing suit.  Guy B.
responds that his claims do not involve a "condition of
confinement" that are covered by the Prison Litigation Reform
Act's exhaustion requirement under 42 U.S.C. §1997e.  Plaintiffs
have also submitted documentation that Guy B. received a final
ODRC administrative decision on July 19, 2010, after Plaintiffs
filed their response memorandum.  (See Doc. 27, Exhibit A)

     If Guy B.'s claims relate to a condition of confinement,
exhaustion is required, and the Court could dismiss his claims
without prejudice to refiling after exhaustion.  See, e.g., Brown
v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998), enforcing
exhaustion requirement and dismissing prisoner's claims without
prejudice.  Plaintiffs cite an unpublished district court order
finding the claims of Cook County jail inmates with mental

-23-

illness who alleged they were denied adequate access to needed
medical treatment upon release, were not claims relating to a
condition of confinement under the PLRA, and that exhaustion was
not required.  See <u>Bolden v. Stroger</u>, 2005 U.S. Dist. LEXIS 7473
(N.D. Ill., February 1, 2005).

But whether exhaustion is not required at all, or whether
Guy B. had filed his claims after he exhausted the ODRC grievance
process, the Court finds that Guy B. lacks standing to seek
relief for the same reasons discussed above with respect to the
other Plaintiffs.  His fears about his future, or how and where
he might receive treatment when he is released, are insufficient
to establish a concrete injury.  This conclusion is bolstered by
the result that the district court ultimately reached in <u>Bolden</u>.
There, the county jail inmates alleged that the majority of them
were released from confinement without medication or discharge
plans necessary to manage their psychiatric illnesses.  They
alleged that the lack of such plans may lead them to abuse drugs
or alcohol, may cause their arrest or incarceration, or may
result in hospitalization or institutionalization.  Plaintiffs
sought injunctive and declaratory relief, prohibiting the
defendants from releasing mentally ill prisoners without pre-
release planning and medication.  The district court concluded
the plaintiffs lacked standing, finding that the potential
injuries plaintiffs alleged were speculative and hypothetical,

-24-

and were not the sort of particularized harm, or imminent threat
of harm, necessary to establish standing.  The Court reaches the
same conclusion here with respect to Guy B.'s claims.

    For all of these reasons, the Court must conclude that none
of the Plaintiffs have established that they have standing to
seek the relief requested in their amended complaint.  This Court
therefore lacks jurisdiction over the asserted claims.

3.  <u>Plaintiffs' Statutory and Constitutional Claims</u>.

    The amended complaint seeks injunctive relief under a number
of different statutes, including the Medicaid Act, the Food Stamp
Act, and the Americans with Disabilities Act, and constitutional
claims of due process violations and deliberate indifference to
medical needs.  Defendants have raised a number of arguments
addressed to the merits of these claims, and Plaintiffs have
responded to those arguments.  The Court's conclusion with
respect to Plaintiffs' standing applies to all of their claims
for injunctive and declaratory relief.  Therefore, the Court need
not address the additional arguments raised in the parties'
briefs with respect to the merits of each of these claims.

**CONCLUSION**

    For all of the foregoing reasons, Defendants' motion to
dismiss the original complaint (Doc. 15) is denied as moot.
Defendants' motion to dismiss the amended complaint (Doc. 19) and
the motion for leave to file an oversized brief (Doc. 17) are

-25-

granted.  Defendants' motion for an order to show cause (Doc. 20)
is denied as moot.  Plaintiffs' claims are hereby dismissed with
prejudice.

     SO ORDERED.

     THIS CASE IS CLOSED.

Dated: January 26, 2011     <u>s/Sandra S. Beckwith</u>
                    Sandra S. Beckwith
                    Senior United States District Judge